## HENDERSON *vs.* HALE.

1. When there are several counts in the declaration, and a plea is pleaded to only a portion of them, a demurrer to such a plea may be visited upon the counts to which it relates.

2. A publication made by the defendant, of and concerning the plaintiff, which alleges substantially, that the town commissioners had placed in the hands of the plaintiff, as County Treasurer, notes to the amount of $1949 94; that the defendant notified him that the commissioners appointed by the Judge of the County Court to examine his office were in town, and willing to proceed with the investigation, but the plaintiff said he had not time for the investigation before the election, and refused; that the plaintiff and his friends had circulated the report, that he made the proposal to go into the examination, and that the defendant refused; that the commissioners made a slight examination of the plaintiff's papers, and found among them receipts of C, for $626 04; that the plaintiff accounted for the receipt of $276 55, and had vouchers for cash paid out $219 85, and cash on hand $35; that the defendant "warned" him to have his books and office examined, instead of the few papers which he had exhibited, but he refused; that the plaintiff only reported to the commissioners $276 55, as collected by him, as appeared from their certificate; and which then avers "that there has been $510 45 collected from the claims placed in his hands by said commissioners," and annexes the names of the persons from whom collected, is not a libel, and its meaning cannot be enlarged by an innuendo, that the defendant thereby intended to charge the plaintiff with fraud, corruption, embezzlement, or other misconduct in his office of County Treasurer.

Henderson v. Hale.

ERROR to the Circuit Court of Cherokee. Tried before the Hon. S. C. Posey.

RICE & MORGAN, for plaintiff in error:

1. Libel has always been treated with sterner vigor than slander; " because it must have been effected with coolness and deliberation, and must be more permanent and extensive in its operation than words."—White v. Nicholls, 3 Howard's (U. S.) Rep. 285.—Weir v. Hoss and Wife, 6 Ala. 881.

2. Actions may be maintained for defamatory words published in writing or in print, which would not have been actionable if spoken.—3 Howard's U. S. Rep. 285; Levi·v. Milne, 13 Eng. Com. Law, 396; 6 Ala. 881.

3. Words not otherwise actionable, may form the basis of an action when spoken of a party in respect of his office, profession or business."—3 Howard (U. S. Rep. 285.—Levi v. Milne, 13 Eng. Com. Law. Rep. 396.

4. The law presumes a libellous publication to be malicious, unless it is proved to be published on an innocent or justifiable occasion, ib.—Dexter v. Spear, 4 Mason, 115.

5. For the oath and duties of a County Treasurer—see Clay's Dig. 577-580. For additional duties and responsibilties of County Treasurer of Cherokee county—see Pamphlet Acts of 1843-4, p. 160-164, § 5 & 8, &c., all the sections.

6. When the declaration contains any good count, and pleas are filed to which the plaintiff demurs, it is erroneous for the court to visit such demurrer back upon the declaration. And if upon such erroneous decision, the plaintiff is induced to take a non-suit, he may, under our statute, avail himself of such error in this court and have the judgment reversed. The interference of the court below, in such an irregular manner, with the established modes of proceeding, cannot be sanctioned.—Fontaine v. Lee, 6 Ala. 889.—(See the statute which authorizes a party to take a non-suit, and still revise the proceedings.)

7. The intent with which words were published, or the sense in which they were used, is a question of fact: The intent or sense is averred; and frequently words become libellous from the intent or sense.

WHITE & J. B. MARTIN, contra:

There is nothing in the libel complained of in itself, which sub

jects the plaintiff to ridicule, disgrace or infamy. It is not alleged that these claims were placed in his hands as county treasurer, or that he was bound to account for them. Nor it is alleged that Brindler and others are commissioners appointed under the law, to examine his office as county treasurer. Nor is it stated what commissioners they are.

The judge of the County Court, and the commissioners of roads and revenues have the power to examine the office of the county treasurer, and it is the duty of the judge of the County Court, to appoint once in each year, three persons to examine the books and vouchers of the county treasurer.—Clay's Dig. 580, § 25-28.

Now if either of these had demanded of plaintiff an exhibition of the condition of his office, and he had made a false exhibit to them, this would have been misconduct in office; but to a mere volunteer, he was bound to make no disclosures, and charging him with a failure to disclose, is no imputation. If these are essential facts, they must be averred, or else they cannot be proven, and the declaration is demurrable.

The declaration should have stated that these claims or notes were the property of another, and in his (plaintiff's) custody, either for safe keeping or for collection ; unless they were another's's, he could not be charged with blame for converting them, and unless it was his duty to collect them, he could not be censured.

But the defendant does not charge plaintiff with having collected these notes, or with having failed to collect them. The libel complained of scrupulously avoids such a charge. It states, in connection with the fact, that of the notes placed in Henderson's hands——were in hands of Wm. L. Cain, as shown by his receipts, that $570 had been collected; it does not say by whom, whether by Henderson or Cain, or some other person, nor can the meaning of this be extended by an innuendo.—Weir v. Hoss, 6 Ala. 881 ; 1 Chit. Plead. 407 ; 1 Saun. 243, note 4; McLacy v. Ross, 5 Bin. 218 ; Stafford v. Green, 1 Johnson, 505.

When libel is actionable only in respect of the plaintiff's profession, there must be a distinct allegation, that plaintiff was at the time of the scandal, in such profession.—1 Chit. Plead. 402, and a mere statement in the inducement is not sufficient.

Words not actionable in themselves, cannot be rendered so by an innuendo, without a prefatory averment of extrinsic acts which

make them slanderous.—Watts v. Greenleaf, 2 Dev. 115; Linville v. Earlyvine, 4 Black. 470; Brown v. Brown, 14 Maine Rep. 317; Sweetapple v. Jesse, 5 Barn & Ad. 24-27.—Wood v. Scott, 13. Ves. 42; Canterbury v. Hill, 4 S. & P. 224; Baugh v. Harm, 8 Johns. 109; 8 Miss. 512. The declaration should show how the libel connects itself with the professional conduct of plaintiff, Ayre v. Craven, 2 Ad. & Ellis, 2. The greatest strictness of pleading required in this action, State v. Brownlow, 7 Meigs, 63.

The declaration cannot be sustained on the ground that the publication was made in reference to one in office, or in reference to his conduct in office. The declaration to sustain such action should have charged an actual breach of official duty, or of oath, or the commission of some crime or misdemeanor.—Hogg v. Dorrah, 2 Por. 212; Booker v. Coffin, 5th Johns. 188. Onslow v. Horne, 3 Wilson, 177.

In a matter of public concern, a majority of commissioners may act.—Jennings & Graham v. Adm'rs. of Jenkin, 9 Ala. 285; Com'rs. of Allegany Co. v. Licking, 6 S. & R. 166; Baltimore Turnp., 5 Binn. 481; but there is no case in which a minority can act.

The county treasurer was not bound to account to the commissioners of the town of Centre.—Acts of 1843-4, 162, §§ 5, 8.

A demurrer in any stage of the pleadings reaches to the first defect.—Governor v. Baker and others, 14 Ala. 655; Haynes v. Covington, 9 S. & M. 470.

CHILTON, J.—This was an action on the case brought by the plaintiff in error, against the defendant in the Circuit Court of Cherokee.

The declaration contained seven counts. The defendant demurred to the fourth count, which demurrer was sustained, and he pleaded to the first, second, third and fifth, not guilty, and justification. To these pleas the plaintiff demurred, and the defendant asked that the demurrer should be visited upon the counts to which the pleas related, and the court considering said counts insufficient visited the demurrer upon them, and held them bad; thereupon, the plaintiff entered a *nolle prosequi* as to the other counts, and judgment was entered upon the demurrer for the defendant.

It is unnecessary for us to decide, whether the demurrer to a plea, can be visited upon any count in the declaration, to which the plea did not purport to be an answer. This is not the point be-before us. The question here is, whether, where there are several counts, and the plea is pleaded to only a portion of them, a de-murrer to such plea may be visited upon the counts to which the plea relates; and this question is too clear and well settled to admit of any doubt. A demurrer to the plea opens the pre-vious pleadings, and reaches back to the first fault of the party demurring upon the motion of the opposite party, and we see no reason why this rule should not apply in cases where there are several counts. A demurrer to the plea goes back to the count; so a demurrer to a replication goes back to the plea, and this, although a demurrer has been overruled previously to the plea.— Cummings v. Gray, 4 Stew. & Por. 397 ; Donnell v. Jones, 13 Ala. 390; ib. 500; Sykes v. Lewis, 17 Ala. 265. We think if any one of the counts to which these pleas related, was defective and insufficient, it was the duty of the court, upon the motion of the defendant, to visit the plaintiff's demurrer upon them.

The question then comes up, were any of the counts to which a demurrer was sustained sufficient. Properly to determine this question, it will be necessary to ascertain particularly the legal effect of the averments contained in them.

The first count alleges that the plaintiff for a long time before, and at the time of filing the declaration, was the treasurer of Cherokee county, and after stating his good character, &c., by way of inducement, avers that the defendant wickedly intending to bring him into disgrace, &c., as county treasurer, &c., false-ly, wickedly and maliciously composed and published of and con-cerning the said plaintiff, and of and concerning his demeanor in his office of county treasurer as aforesaid, the false, scandalous, malicious and defamatory libel following ; that is to say :

" To the public : R. S. T. Henderson, Esq., and others in his interest, are circulating a report that he (Henderson) as county treasurer, proposed on last week to have his office examined by the gentlemen appointed by the judge of the County Court for that purpose, and that I objected, and said it should not be done until after the election. The following certificate shows which were for, and which were opposed to the examination.

Certificate, No. 1.—We the undersigned, do certify, that we

were present in Centre, when the following certificate of the town commissioners were made, and that Martin Hale informed Mr. Henderson that the committee appointed by the judge of the County Court were in town, and willing to examine his books as treasurer. Henderson refused to have it done, and said he had no time until after the election," signed by S. P. Wharton and Wm. Hickman.

"On the day the commissioners gave Henderson the certificate, he has produced and circulated, I warned Henderson to have his books and office examined by the proper persons, instead of a few papers he showed to the said commissioners. He refused, and said commissioners gave the following certificate.

"Certificate, No. 2.—We the undersigned do certify, that we paid in the county treasury of Cherokee county, notes of the sale of the town of Centre, to the amount of $1949 94 1-4, and after taking a slight look over Henderson's, said county treasurer's, papers, find there receipts of William L. Cain amounting in all to $626 04 ; only two notes over fifty dollars, which two notes were against Moses Scott and William Hickman, for $119 55 each. Said Henderson accounts for receiving $276 55, and has vouchers for money paid out $219 85, and found cash on hand, $35. Given under my hand, this 21st July, 1847.

(Signed)        JAMES WHARTON,
                AARON CLIFTON,
                ASA R. BRINLEY.

"From the foregoing certificate, Henderson only reported $276 55, as collected by him. I say there has been $510 45 collected from the claims placed in his hands by said commissioners, and annex the names of persons of whom collected. I know not how many more have paid, or where the notes are." Signed Martin Hale ; and then follows a list of names with the amounts paid by them, making in the aggregate $510 45.

The said defendant meaning, and intending by said false, scandalous and defamatory libel, to charge the said plaintiff with fraud, corruption and misconduct in his said office of county treasurer of Cherokee county.

The second count only avers the last paragraph of the publication as libellous, with the innuendo ; "meaning thereby to charge the plaintiff with the crime of embezzlement."

The third and fifth counts are not essentially variant from

these above mentioned; the innuendo to the third, that the defendant thereby intended "to charge the plaintiff with being guilty of a 'fraudulent concealment of the condition of the business of his said office of county treasurer, and to charge him with gross misconduct in said office." The innuendo to the fifth count is, that the defendant meant to charge the plaintiff with the crime of embezzlement.

It is the office of an innuendo to explain some matter already expressed, or serve to point out where there is precedent matter. It may apply what is already expressed, but cannot add to, enlarge or change the sense of the previous words. If it introduce a meaning broader than that which the words naturally bear, it is bad, unless connected with proper introductory averments.— See this doctrine fully exemplified in notes to 1 Saund. R. 243; also, Golstein v. Foss, 6 B. & C. 154, (S. C. 13 Eng. C. L. R. 128); S. C. on Error in Exch. Cham., 4 Bing. 489, (15 Eng. C. L. R. 53.) And it is for the court to determine whether the meaning charged by the innuendo *may legally* be attributed to the publication, and for the jury to decide whether the intent charged be true in fact.

Now, waiving the consideration of the objection that this declaration does not charge the plaintiff to have been *at the time* of the publication of the alleged libel, the treasurer, we do not think that a fair and reasonable interpretation of it can be considered as imputing to the plaintiff the crime of embezzlement, or of any corruption or malfeasance in the discharge of his official duties. The substance of the publication is, that the commissioners for the town of Centre had deposited or paid over to Henderson, as county treasurer of Cherokee county, notes to the amount of $1949 94¼; that Hale notified Henderson that the commissioners appointed by the Judge of the County Court to examine his office were in town and willing to proceed with the investigation, but the latter said he had not time for the investigation before the election, and refused; that Henderson and his friends had circulated the report that he, Henderson, made the proposal to go into the examination, and that Hale refused; that the commissioners made a slight examination of Henderson's papers and found among them receipts of W. L. Cain, amounting to $626 04; that Henderson accounted for the receipt of $276 55, and had vouchers for cash paid out, $219 85, and cash on hand, $35;

that Hale warned Henderson to have his books and office examined, instead of a few papers which he exhibited, but he refused; that Henderson only reported to the commissioners $276 55 as collected by him, as appears from their certificate. The defendant then avers, that there has been $510 45 collected from the claims placed in said Henderson's hands, and annexes the names of the persons from whom collected. Now what is there in all this, imputing gross negligence, dishonesty, or other impropriety in the discharge of Henderson's official duties? The defendant does not state that *Henderson* has collected more money than he has accounted for; he only says there was more collected from the notes placed in his hands, but the publication shows that a portion of these notes were placed in the hands of a third person, whose receipts they found on file, who may have received the amounts collected; and we are led to infer this from the guarded manner in which it is stated in the publicatiom: "From the foregoing certificate, Henderson only reported $276 55 *as collected by him.* I say there has been $510 45 collected"—(he does not say by him, but)—"*from the claims placed in his hands by said commissioners,*" &c. This writing must receive the interpretation which an ordinary reader would put upon it, (Cooke's Law of Defam. 4,) and thus construed, we do not regard it as libellous. A libel affecting the character of individuals is defined to be any writing, picture or other sign tending, without lawful excuse, to injure the character of an individual, by subjecting him to ridicule, contempt or disgrace.—1 Star. on Slan. 169; Cooke on Def. 2; Weir v. Hoss & Wife, 6 Ala. 881. We do not think that such is the tendency of this publication. There is no averment in the declaration that it was the duty of Henderson to have his books and office examined at the time Hale desired him, or in the language of the writing, "warned" him to do so. So that his refusal cannot legitimately be construed into a breach of official duty. There is no averment that it was his duty to have collected the notes placed in his hands by the town commissioners, but if the statute would supply the want of such averment, still he had the right to place them in the hands of an attorney or a justice of the peace for collection by suit. There is no averment that he had converted any of the notes or the proceeds of the same to his own use, or that he concealed anything from the commissioners, or that they demanded an ex-

amination into the affairs of his office, as the statute requires. The most that can be said of the publication, as exhibited in the several counts to which demurrers were sustained, is, that Henderson refused upon, it may be, the officious application of Hale, to have his office and books examined before the election, and that certain persons upon a *slight* examination of some papers exhibited, gave a certificate which does not show what disposition has been made of all the notes placed in Henderson's hands. We have seen that the innuendoes which enlarge the meaning of the writing are not justified. The court properly sustained the demurrers. Let the judgment be affirmed.