# Iron Age Publishing Company *v.* Crudup.

*Action against Publishers of Newspaper, for Libel.*

| 85 | 519 |
| 94 | 43 |
| 85 | 519 |
| 113 | 357 |
| 85 | 519 |
| f129 | 355 |

1. *What publication is libellous.*—A publication in a newspaper, with the heading, "C.'s clutch on his friends, which caused them to trust him, and get left," and which states, in substance, that he occupied the position of shipping clerk for a mercantile firm, "and has left the city under a cloud;" that the book-keeper of the firm presented a bill to one of its customers, who produced C.'s receipt for it; that C. was thereupon "paid up and discharged;" that he then "went to his friends, and borrowed what money he could, went to his boarding house, and took his valise and clothes away, leaving a board bill unpaid;" that "no one knows where he went;" that "he was a good talker, and caught a number of his friends who had confidence in him," and that "he told marvellous stories of his wealthy uncle who lived in Louisiana,"—is *per se* libellous and actionable, without an averment of special damages.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Joseph L. Crudup, against the appellant, as the owner and publisher of a newspaper in the city of Birmingham, called the *Birmingham Age*, to recover damages for the publication of an alleged libel of and concerning him, which, as set out in the complaint, was in these words: "*Crudup's clutch on his friends, which caused them to trust him, and get left.* Joe Crudup, who occupied the position of shipping clerk for the firm of Wimberly & Malone, has left the city under a cloud. He has been a trusted employee of the firm for about five weeks. He came to this city from Meridian, well recommended. F. M. Beall, the book-keeper, had occasion to collect a bill from D. A. Shumate, on 24th Street, on Thursday. He had a receipt showing that the money had been paid to Crudup. Beall was surprised, and asked the merchant to accompany him to the store, where he showed a member of the firm a receipt. Beall announced that he or Crudup must leave the store. Crudup was paid up, and discharged. He went to his friends, and borrowed what money he could. Thursday night he went to his room at Mrs. Pearson's boarding house, and took his valise and clothes away with

him, leaving a board bill unpaid. Where he went no one knows. He was a good talker, and caught a number of friends who had confidence in him. He has told marvellous stories of his wealthy uncle who lived in Louisiana. He claims to have $200 a month, rents, from Meridian."

The court overruled a demurrer to the complaint, and its judgment is here assigned as error.

R. H. Pearson, for appellant.

Hewitt, Walker & Porter, *contra.*

CLOPTON, J.—The single question in this case, which is an action for libel, arises on a demurrer to the complaint. The ground of demurrer is, that the publication set forth in the complaint is not libellous *per se*, and no special damages are averred.

A material distinction between verbal and written slander has been long settled, and uniformly maintained, though eminent jurists have been disposed to consider it as not well founded in reason and principle. Many charges are actionable, when written or printed, which are not, when merely spoken. When the words are spoken, and do not impute an indictable offense, and are not of such nature as carries a legal presumption of injury to an individual in his office, profession, trade or business, special damages must be alleged and proved; but, when the charge is written or printed, and is libellous *per se*, special damages need not be averred. In such case, the law infers injury as the natural consequence. The reason of the difference is, that words may be spoken in haste, or heat of passion, and impressions created soon pass away; but, when written or printed, they are premeditated, more permanent, and calculated to do more injury. The definitions of libel, as found in the cases, vary somewhat in phraseology, and are more or less comprehensive, as may be called for by the particular charge involved in the case. (Generally, any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel, which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt or ridicule, or charges an act odious and disgraceful in society. This general definition may be said to include whatever tends to injure the character of an individual, or blacken his reputation, or im-

[Iron Age Publishing Co. v. Crudup.]

putes fraud, dishonesty, or other moral turpitude, or reflects shame, or tends to put him without the pale of social intercourse)—*Trimble v. Anderson*, 79 Ala. 514; *Henderson v. Hale*, 19 Ala. 154; *Dexter v. Spear*, 4 Mass. 115; *Adams v. Lawson*, 94 Amer. Dec. 455, 460; *Solverson v. Peterson*, 54 Amer. Rep. 607; 1 Amer. Lead. Cas. 127; 4 Wait's Act. & Def. 282.

In construing the publication complained of, the scope and meaning of the whole must be considered, and interpreted as others would naturally understand it. An application of the foregoing definition to the publication alleged in the complaint will be sufficient to dispose of the demurrer. It commences: "Crudup's clutch on his friends, which caused them to trust him, and get left." Its substance is, that the plaintiff, who occupied a position of shipping clerk of a mercantile firm, and had been a trusted employee for several weeks, had left the city under a cloud; that he had collected a bill due by D. A. Shumate to the firm, which he had secreted until the book-keeper of the firm called to collect the same bill, when he discovered that Shumate had plaintiff's receipt, and thereupon plaintiff was paid up and discharged; that he borrowed what money he could from his friends, went to his boarding house, and took his valise and clothes away with him, leaving a board bill unpaid. "Where he went, no one knows; he is a good talker, and caught a number of friends, who had confidence in him, and told marvellous stories of his wealthy uncle, who lived in Louisiana."

Positive assertion of the charges is not requisite to constitute a writing libellous; they may be made in the form of insinuation, if their import is plain. The statutory declaration in respect to a charge of crime in a libel is: "Every accusation importing the commission of a crime punishable by indictment, must be held presumptively to mean what the language used ordinarily imports."—Code, 1886, § 2726.. For an agent or clerk to convert to his own use, or fraudulently secrete with intent to convert to his own use, money which came to his possession by virtue of his employment, is embezzlement.—Code, 1886, § 3795.. The language of the publication plainly imports the commission of such an offense, and imputes fraud and dishonesty in other respects. When the facts stated in the publication, and their extent and meaning, are considered, there can be no doubt of its tendency to injure the character of plaintiff, diminish his

[Hall v. Pegram.]

reputation, bring him into scandal and disgrace, destroy public confidence in his honesty and integrity, and to injure him in his calling.

Affirmed.