# Wofford *v.* Meeks *et al.*

129  349
f129 669

*Action against Newspaper for Libel.*

1. *When publication libelous per se.*—A publication which imputes to public officers the prostitution of the public finances for wicked, corrupt or selfish motives, and charge that in awarding a contract, which their duties require, they gave the preference to a person of their political faith, when his bid exceeded the offer of another, solely because he was of their political faith, is libelous *per se.*

2. *Same; case at bar.*—The publication in a newspaper, with the heading: "Wholesale robbery—the way Etowah county tax payers' money goes," and which, after reciting instances,

[Wofford v. Meeks *et al.*]

which, if true, show the prostitution of the county's fund by the commissioners of the county, then states that in several instances where bids were received for contracts, the contract was given to the highest bidder, and by way of explanation of this it is stated that the person who got the contract was of the same political faith as were the commissioners and he had rendered "more party service" than the other bidder,—is libelous *per se* and actionable.

3.  *Libel; actionable when referring to a particular class.*—Where a libelous publication is directed to a particular class of persons, each of the persons composing the class, or any one of the class, may maintain an action therefor, upon showing that the words applied to them.

3.  *Same; same; commissioners court.*—Where a publication is directed to the commissioners of a county, any one of the commissioners may maintain an action to recover damages for such publication.

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

This action was brought by the appellant, Thomas J. Wofford, Jr., against W. M. Meeks and W. P. Johnson, constituting the firm of Meeks & Johnson, a partnership. The complaint contained two counts. These counts are as follows—the portions of said counts which are within the parenthesis being the parts of each of said counts which the defendant moved to strike from counts, respectively: "The plaintiff claims of the defendants five thousand dollars' damages for that the defendants at and prior to the grievances herein complained of (wrongfully, willfully or maliciously intended to injure the plaintiff in his good name and standing as a citizen among his neighbors, and other citizens of the county and State, and to bring plaintiff under suspicion, and cause the opinion and belief to be generated and entertained that plaintiff was dishonest, corrupt and unworthy of trust or confidence by his neighbors, his fellow-citizens, and the community at large, did on the 3d day of July, 1894, at Gadsden, Etowah county, Alabama, publish or cause to be published and circulated or cause to be circulated, a false, untruthful, scandalous, malicious and defamatory libel of and concerning plaintiff in a newspaper called the Gadsden Times News, and of which newspaper defendants were at the time of the grievances herein complained of the proprietors, editors

[Wofford v. Meeks *et al.*]

and publishers, which said libel is in the following words and figures, to-wit) : 'Wholesale Robbery—The Way Etowah County Tax-payers' Money Goes. Communicated. Editors Times and News : As a great deal is being said by the third partyites concerning the finances of Etowah county, I wish to tell the readers of the paper what I know to be facts and can be proven. In the fall of 1893 a bridge was built over Dry creek at the old Wharton place on the Gilbert ferry road, at a cost of $3,900, where the water never gets too high to cross for more than six hours at a time after a hard rain. I have been reliably informed that this road had not been worked in six or eight years, at any rate the commissioners had to pay a man $1,000 to build an approach to the bridge at each end, as there were no hands on the road to do the work, only a few who would support the ticket for the present term. Another economical job was at the Mc-Cartney bridge, where there was a $1,500 job. The Coosa furnace didn't like to pull up the abutments because they were left too steep by the road hands, so they took the old rotten bridge that was thrown away and put it on each end of the bridge, and it is now much worse, but it is not the business of the commissioners. A still more economical job was done at the Sutton bridge, where there was a small job to be done. The bidders and one commissioner met, and two men were all that would bid, one of them bid $2.50 and the other $5, and the man that bid $5 got the job. This makes me think of letting out of the paupers. One man bid $12 per month, and another got them at $30 per month, and a raise to $45 per month. The Third partyites explain this by saying that Mr. H.'s bid was inconsistent, as he could not care for them at that price. But I rather think that Mr. G. had not done as much party service as the other man had. This and various other circumstances of like character is the reason that the county warrants are only worth 50 cents on the dollar now."

"Plaintiff avers that prior to and at the time of the said libellous publication, and ever since the general election in August, 1892, he was and has been a member of and commissioner of the court of county commissioners of Etowah county, Alabama, and was elected as the candidate of the Third party at said election in 1892, as such commissioner, and prior to and at the

time of said libellous publication, plaintiff was a candidate of the Third party for reelection to said office of commissioner as aforesaid at the then approaching election to be held on the 6th of August, 1894, and plaintiff was the only member of the said court of county commissioners that stood for reelection at said general election. Plaintiff avers that said defendants were very much opposed to plaintiff's reelection and desired his defeat at said election in August, 1894. Plaintiff avers that the said defendants intended by the publication of such libellous matter, and also plaintiff avers, that the language, words and figures used in said libellous publication show, that the unlawful, willful or malicious intention and purpose of said defendants was to create the belief and understanding among the people of the county and of the State and among the friends and neighbors of the plaintiff and to hold up plaintiff to shame and disgrace as being a dishonest man, a corrupt man, and one that is unworthy of confidence and trust, and unfaithful to trust and confidence. Plaintiff avers that the malicious intention of such defendants in the publication of such malicious libel was to hold up the plaintiff to the people and voters of the county and to the friends and neighbors of plaintiff as unworthy and unfaithful as a county commissioner; that plaintiff as such commissioner had acted unlawfully and intentionally dishonest and corrupt in the discharge of the duties of said office; that plaintiff used the power and authority of said office corruptly, dishonestly and unlawfully to aid his party friends and to secure votes for plaintiff's reelection as such commissioner by engagements and performances of unnecessary public works in Etowah county and a profitless and extravagant use of the money of the tax-payers of the county, to their loss and injury as to amount to *wholesale robbery* of said tax-payers and people, and that plaintiff was unworthy of trust and confidence of the people of the county as county commissioner, because plaintiff was corrupt, dishonest and unfaithful in the discharge of the duties of such office. Plaintiff avers that by means of the wrongs and grievances aforementioned committed by the defendants to plaintiff,

he has been greatly damaged and injured to the amount of five thousand dollars, hence this suit.

"2. The plaintiff claims of the defendant five thousand dollars damages for falsely and maliciously publishing of and concerning him in a newspaper called the Gadsden Times-News, published at Gadsden, Alabama, by the defendants, and of which the defendants were the editors and proprietors, the following matter (with intent to defame plaintiff,) viz.: [Here follows publication.] Plaintiff avers that the defendants made publication of said libel on 3d July, 1894. Plaintiff avers that prior to and at the time of the said libellous publication, and ever since the general election in August, 1892, he was and has been ever since a member of the court of county commissioners of Etowah county, and was elected as the candidate of the Third Party at said election in 1892 as such commissioner, and prior to and at the time of said libellous publication plaintiff was a candidate of the Third Party for reelection to said office of commissioner as aforesaid at the then approaching general election to be held on the 6th August, 1894, and plaintiff was the only member of the said court of county commissioners that stood for reelection at said election. Plaintiff avers that said defendants were very much opposed to plaintiff's reelection, and desired his defeat at said election in 1894. Plaintiff avers that by means of the wrongs and grievances aforementioned committed by defendants to plaintiff, he has been greatly damaged and injured to the amount of five thousand dollars, hence this suit."

The defendants filed the following motion: "And now come the defendants and move to strike the *innuendo* in the first count of the complaint, beginning with the words 'plaintiff avers that the said defendants intended by the publication of such libellous matter,' and also plaintiff avers that the language, words and figures used in said libellous publication show,' and ending with the words 'because plaintiff was corrupt, dishonest and unfaithful in the discharge of the duties of such office,' because the imputation therein contained is not authorized by the publication.

"Also move to strike from said count, beginning with the words 'wrongfully, willfully or maliciously intending to injure plaintiff in his good name,' and ending

with the words 'which said libel is in the following words and figures, to-wit:' because the imputation therein contained is not authorized by the publication. Also to strike from the second count the words 'with intent to defame the plaintiff' because no such conclusion is authorized by the publication."

On the submission of the cause upon this motion, the court rendered a judgment sustaining said motion and ordered that the portions of the counts referred to therein be stricken from the first and second counts respectively. To the rendition of this judgment the plaintiff duly excepted. The appeal is prosecuted from this judgment, and the rendition thereof is here assigned as error.

W. H. DENSON, for appellant.—Any false and malicious publication is libelous *per se* which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt or ridicule, or charges an act odious and disgraceful in society. This general definition includes whatever tends to injure or blacken his reputation, or imputes fraud, dishonesty or other moral turpitude, or reflects shame or tends to put him without the pale of social intercourse.—*Adams v. Lawson,* 94 Am. Dec. 455, 458; *Solverson v Patterson,* 84 Am. Dec. 607; 4 Wait's Actions and Defenses, 282; *Gaither v. Adv. Co.,* 102 Ala. 462; *Ware v. Clowney,* 24 Ala. 707; *Ivey v. Pioneer Co.,* 113 Ala. 349; 13 Am. & Eng. Ency. of Law, 299, (1st ed.) ; *Montgomery v. Knox,* 3 So. Rep. 211; *Snyder v. Fulton,* 6 Am. Rep. 314.

It is libelous to impute to any one holding public office that he has been guilty of improper conduct in that office, or has been actuated by wicked, corrupt or selfish motives, or is incompetent for the post.—*Augusta Evening News v. Radford,* 44 Am. St. Rep. 53, 54, 55, and authorities there cited; *Cotulla v. Kerr,* 15 Am. St. Rep. 819, 823, *et seq.; Sweeney v. Baker,* 31 Am. Rep. 757; 13 Am. & Eng. Ency. of Law, 309 (1st ed.) ; *Aldrich v. Press Co.,* 86 Am. Dec. 84, and note; Newell on Slander and Libel. (2d ed.), 168, §§ 1, 2, 3, 4, 7, 8, 9, 10, 11, 12, 14; p. 69, § 9; p. 81, § 18; 4 Wait Ac. and Defenses, 285.

DORTCH & MARTIN, *contra,* cited *Kirksey v. Fike,* 29 Ala. 206; 15 Amer. St. Rep. 347; *Ivy v. Pioneer,* 113 Ala. 358; 70 Amer. St. Rep. 754; 22 Amer. St. Rep. 481.

TYSON, J.—The questions presented for consideration involve the right of the plaintiff to maintain this action. The complaint avers that the plaintiff was a member of the commissioners' court of Etowah county; that the defendants were opposed to him politically and that the alleged libelous publication was intended and purported to bring him under suspicion and to cause the opinion and belief to be entertained by his neighbors, ' that he was dishonest, corrupt and unworthy of trust and confidence, etc.

The first question to be determined is, was the publication libelous *per se?* In determining this question we are confined to a construction of the language employed in the publication, and cannot look to the inuendo alleged in the complaint. That is but the deduction of the pleader from the words used in the publication, and unless his deduction is supported by the language of the publication, the actionable quality is not legally disclosed. For an inuendo serves merely to explain matter already expressed or to point out where there is precedent matter. It may apply to what is already expressed, but cannot add to, enlarge or change the sense of the words of the publication. It is for the court to say whether the meaning charged by the inuendo can be legally attributed to the language used in the publication and for the jury to ascertain whether the *intent* charged be true in fact. If this inquiry is decided by the court adversely to the pleader, "this puts an end to it; for it is not permissible to make proof that the words employed were uttered in the sense or with the meaning imputed to them in the inuendo. That is not the subject of proof." *Gaither v. The Advertiser Co.,* 102 Ala. 458; *Henderson v. Hale,* 19 Ala. 154.

In the case of *Iron Age Publishing Co. v. Crudup,* 85 Ala. 520, this court said: "The definitions of libel, as found in the cases, vary somewhat in phraseology and are more or less comprehensive, as may be called for by the particular charge involved in the case. Generally, any false and malicous publication, when

expressed in printing or writing or by signs or pictures, is a libel, which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt or ridicule, or charges an act odious and disgraceful in society. This general definition may be said to include whatever tends to injure the character of an individual or blacken his reputation or imputes fraud, *dishonesty* or other moral turpitude or reflects shame or tends to put him without the pale of social intercourse." This quotation clearly recognizes the principle that if the words employed in the alleged libelous publication impute dishonesty or corruption to an individual, they are actionable *per se*—a principle well established in other jurisdictions.—13 Am. & Eng. Ency. Law, 295, 296, and note 3.

So, too, it is libelous to impute to any one holding an office that he has been guilty of improper conduct in office or has been actuated by wicked, corrupt or selfish motives.—Newell on Def., Sland. & Lib., p. 69.

We do not understand from the argument of defendants' counsel, that they controvert these propositions. Their contention, on the point under consideration, is, that the language of the publication is not reasonably susceptible of a construction imputing dishonesty to the commissioners. Their insistence is that the article when properly construed is nothing more than a criticism of their conduct in the extravagant administration of the finances of the county. If this insistence is sustained by the language employed, then unquestionably the right of newspapers to discuss questions relating to the welfare, comfort and happiness of the people, it must be understood that this confers on them no immunity from liability in publishing a libel, other and different from any other person. Editors have full liberty to criticise the conduct and motives of public men and measures and policy of government, but the discussion must be fair and legitimate. If an editor goes out of his way to asperse the character of a public man or set of men and to ascribe to him or them base and corrupt motives, he does so at his peril; and must prove the truth of his charges or answer in damages to the party or parties injured.—*Davis v. Shepstone*, 11 App. Cas. 187; *Post Pub. Co. v. Hallam*, 59 Fed.

530, and cases there cited; *McAllister v. Detroit Free Press Co.*, 15 Am. St. Rep. 318, and note.

This brings us to a construction of the language employed in the publication. In construing it, the scope and meaning of the whole must be considered and interpreted as others would naturally understand it. Positive assertion of a charge is not necessary to constitute a writing libelous; they may be made in the form of insinuation, allusion, irony or questions, and the matter will be as defamatory as if asserted in positive and direct terms. Taking the words in their ordinary acceptation, if they convey a degrading imputation, however indirect, it is a libel. As was said in *Peake v. Oldham*, 1 Cowp. 275: "When words from their general import appear to have been spoken with a view to defame a party, the court ought not to be industrious in putting a construction upon them different from what they bear in the common acceptation and meaning of them."—*Rice v. Simmons*, 31 Am. Dec. 766, and authorities cited; cases cited in note 1 on p. 378 of 13 Am. & Eng. Ency. Law, also text on pp. 384-5. Applying these principles of construction to the publication in hand, the conclusion is irresistible that its language imputed to the commissioners the prostitution of the finances of the county to the end of awarding contracts to persons of their political faith —an insinuation, to say the least of it, of corruption and dishonesty. For it will hardly be gainsaid that if the commissioners gave preference in awarding contracts to one of their political faith, when his bid exceeded the offer of another, solely because he was of their political faith, that this was corruption—dishonesty,—and they were unworthy of the confidence and trust reposed in them as the fiscal agents of the county. Such is the warrantable implication, we think, from the language employed in the publication. *Ivey v. Pioneer Saving & Loan Co.*, 113 Ala. 349; *McDonald v. Press Pub. Co.*, 55 Fed. Rep. 264; *Cotulla v. Kerr*, 15 Am. St. Rep. 823.

The remaining question to be determined is, was the plaintiff so affected and particularized by the publication that he can maintain this suit? The article makes no reference to the commissioners' court, but

is leveled at the commissioners, and is an arraignment of the commissioners of Etowah county. It is, as we have shown, the conduct of these men, as a class it may be, that is assailed. The imputation of corruption and dishonesty is clearly aimed at the individuals who make up and constitute the court, and not at the court as an integral body. The averments of the complaint show that the plaintiff was one of the commissioners at the time the contracts were charged in the article to have been made and at the date of its publication. In this class of cases the rule is: "The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff."—Odgers' L. & S. 127.

Mr. Freeman, in his note to case of *Jones v. The State*, 70 Am. St. Rep. 756, after reviewing the cases, says: "We apprehend the true rule is that, although the libelous publication is directed against a particular class of persons or a group, yet any one of that class or group may maintain an action upon showing that the words apply especially to him." And, further, he cites the cases approvingly which hold that each of the persons composing the class may maintain the action. We think this the correct doctrine, and it is certainly supported by the great weight of authority.—13 Am. & Eng. Ency. Law, 392 and note 1; *Hardy v. Williamson*, 86 Ga. 551; s. c. 22 Am. St. Rep. 479.

But it is said in answer to all this, by appellees' counsel, conceding the publication to be libelous, the plaintiff as a commissioner may have voted against the making of the contracts, and therefore, he is not and cannot be referred to in the publication. This proposition might be tenable if the complaint admitted the making of the contracts charged to have been corruptly entered into in the publication. But it is absolutely without merit in the face of the averment that the entire publication is "false, untruthful, scandalous, malicious and defamatory;" and especially is this true, where the defendants by their motion to strike the substantial allegations of the complaint, confess the truth of every material averment thereof.

Reversed and rendered.