# Fitzpatrick *v.* Age-Herald Pub. Co.

## *Libel and Slander.*

(Decided November 27, 1913.  63 South. 980.)

1. *Libel and Slander; Actionable Words; Innuendo.*—The office of innuendo being to explain some matter already expressed, or to point out precedent matter, and not to enlarge or change the sense of previous words, being but the deduction of the pleader, where the published words set out in the complaint are not fairly susceptible of the meaning attributed to them by the pleader in the innuendo, the actionable quality of the words is not disclosed, and the pleading is bad.

2. *Same; Imputing Bad Reputation.*—A publication stating that a shooting occurred in a house which bears a bad reputation with the police, was a libel on plaintiff, who resided with his family in the house, and not a mere libel of the house.

3. *Same.*—A publication stating that a house in which plaintiff resided with his family bore a bad reputation with the police, had a tendency to subject plaintiff to public hatred, contempt or ridicule,

[Fitzpatrick v. Age-Herald Pub. Co.]

and to reflect shame upon him, and to put him without the pale of social intercourse, and was libelous per se.

4. *Same.*—It was not essential to the libelous character of the article complained of that all of the citizens should understand the libel or know that plaintiff's house was referred to, but it was sufficient that all those who knew could understand that plaintiff was the person meant.

5. *Same; Condition Precedent.*—A demand for a retraction under section 3750-1, Code 1907, is not a condition precedent to the maintenance of an action for actual damages for libel; such sections denying merely the right to recover punitive damages unless such demand be previously made.

6. *Same; Objection.*—Where the complaint states a cause of action entitling plaintiff to actual damages though not to punitive damages, and the complaint seeks both actual and punitive damages, the way to reach the excessive claim is by motion to strike, objections to evidence, or requests for special instructions, and not by demurrer.

APPEAL from Birmingham City Court.

Heard before Hon. W. M. WALKER.

Action by Kearn Fitzpatrick against the Age-Herald Publishing Company for libel and slander. Judgment for defendant and plaintiff appeals. Reversed and remanded.

HARSH, BEDDOW & FITTS, for appellant. The plaintiff could have shown by extrinsic evidence that the publication referred to his home although it did not name him. —25 Cyc. 493, note 79; 18 C. C. A. 628; 34 Cal. 48; 47 Cal. 207; 41 N. W. 1034. The enjoyment of private reputation and social respectability is as much a constitutional right as possession of life, property, etc.—*Iron Age P. Co. v. Crudup,* 85 Ala. 519; *Ferndon v. Dickens,* 161 Ala. 181; 16 Am. St. Rep. 544; 9 L. R. A. 621; 13 L. R. A. 864; 112 Mass. 371. The statement was the equivalent of saying that the house was one which had been subject to police surveillance, and that the inmates had a bad reputation with the police, and a right of action accrued in favor of each inmate.—19 N. Y. Supp. 262; 8 C. C. A. 210; Adgers on Libel & Slander, 131.

NATHAN L. MILLER, and NEEDHAM A. GRAHAM, for appellee. It was the thing and not the person which was libelled, and it was for the court to determine whether the meaning charged by the innuendo may legally be attributed to the publication. —*Henderson v. Hale,* 19 Ala. 154; *Trimble v. Anderson,* 79 Ala. 514; *Robinson v. Drummond,* 14 Ala. 174; *Wafford v. Meeks,* 129 Ala. 349; 41 Hun. 422; 95 N. E. 735; Newell on Slander, 281, 286, 290. The law recognizes that property as well as person may be libelled, and that places have reputation distinct from and independent of any one of the persons who reside thereat.—*Cahn v. State,* 110 Ala. 56; *Price v. State,* 96 Ala. 5; *Toney v. State,* 60 Ala. 97; *Sparks v. State,* 59 Ala. 82; 25 Cyc. 558, and authorities supra. Having sued for punitive damages, plaintiff should have demanded retraction and set up refusal.—*Comer v. Age-Herald P. Co.,* 151 Ala. 613; Sec. 3750, Code 1907.

DOWELL, C. J.—Action of libel brought by appellant, Kearn Fitzpatrick, against the Age-Herald Publishing Company. From a judgment for defendant the present appeal is prosecuted.

There is but one count in the complaint; the court sustained a demurrer thereto, and, the plaintiff declining to amend, judgment was thereupon rendered for the defendant, permitting it to go hence without day. The publication complained of is set forth in hæc verba in the complaint. It appears that a man by the name of Michael Brenna, otherwise called Micky Brennan, was shot in the city of Birmingham, Ala., on July 2, 1911, and on the next morning the defendant company published in its paper, the Age-Herald, an account of the shooting, detailing some sensational facts with reference to the affair. The "offensive statement," constitut-

ing the alleged libel of plaintiff, is: "The shooting occurred on Avenue E, between Eleventh and Twelfth streets, in a house which bears a bad reputation with the police." The complaint avers that the house mentioned in the publication was at the time, and had been for a long time prior thereto, and has been ever since said time, occupied by plaintiff, with his family, as a residence, and that, as a proximate consequence of said libel, the plaintiff was greatly humiliated, his reputation greatly impaired, etc. Numerous grounds of demurrer were assigned to the complaint. The vital question in the case is whether or not the published words were libelous, and, if so, did they constitute a libel of the plaintiff, or of the house in which the plaintiff avers he was residing; that is, were they a libel of the person or of the thing—the house?

Counsel for appellee devotes practically his entire brief to the support of the proposition that the libel, if any, was of the thing—the house—and not of the plaintiff. The plaintiff charges that the alleged libelous words were falsely and maliciously published "of and concerning him." There is no mention of the plaintiff's name in the publication. By way of innuendo, the plaintiff avers that the said house mentioned in said publication was, at the time, and had been for a long time prior thereto, and has been ever since said time, occupied by the plaintiff, with his family, as a residence. The plaintiff insists that this averment sufficiently explains the precedent matter—the publication—and shows that the said publication related to, and was a libel upon him. Unless the published words are fairly susceptible of the meaning attributed to them by the pleader in the innuendo, the actionable quality of the words is not disclosed, for the innuendo is but the deduction or conclusion of the pleader. The only office of the innuendo is to explain

some matter already expressed, or to serve to point out where there is precedent matter. It may apply what is already expressed, but cannot add to, enlarge, or change the sense of the previous words. If the meaning given to the words by the innuendo is broader than the words would naturally bear, the pleading is bad, for, in law, the innuendo is but the deduction of the pleader from the words used in the publication, and this court has repeatedly held that it is for the court to say whether the meaning charged by the innuendo is supported by the language used in the publication.—*Henderson v. Hale,* 19 Ala. 159; *Wofford v. Meeks, et al.,* 129 Ala. 349, 30 South. 625, 55 L. R. A. 214, 87 Am. St. Rep. 66; *Gaither v. Advertiser Co.,* 102 Ala. 458, 14 South. 788. As above stated, the appellee insists that the alleged libel was of the "house," and not of the plaintiff. It is also pointed out that the particular house referred to in the complaint is uncertain. The only house mentioned is the house which the plaintiff alleges was his residence, and the word "said" before the word "house" makes it certain that the plaintiff intended to and did aver that the alleged libelous publication referred to the particular house occupied by the plaintiff with his family.

It is strenuously argued that the plaintiff's complaint shows that he was not libeled, and that the libel, if any, was of the thing, the house; that it is the house which has a bad reputation with the police, and not the occupants thereof. In support of this contention the following Alabama cases are cited: *Cahan v. State,* 110 Ala. 56, 20 South. 380; *Toney v. State,* 60 Ala. 97; *Wooster v. State,* 55 Ala. 221; *Price v. State,* 96 Ala. 5, 11 South. 128. The cases are not in point. The principle announced in two of these decisions is that, in a prosecution for keeping a certain character of house prohibited by law, the state cannot offer evidence of the character of the

house. The house acquires whatever reputation it has from the occupants thereof; it can make or earn none for itself; it can and does reflect only the reputation of its occupants, or those who frequent it. We know of no way by which a house can, of its own act, acquire a reputation. This being true, when we speak of a certain house as being disorderly, we must necessarily be understood as referring to the conduct of those who live in, or who frequent, the same by and with the permission of the occupants. When, therefore, it is said of a house, "It has a bad reputation with the police," we refer to the head of the house, and, in fact, we reflect upon each member of the same. The language of the publication is, "The shooting occurred on Avenue E, between Eleventh and Twelfth streets, in a house which bears a bad reputation with the police." This charges that, at the present time, the house bears a bad reputation with the police; and, under the plaintiff's averment, it was at that moment of time, and had been for a long while prior thereto, the place where he and his family resided. This reflected upon the plaintiff, for he and his family must be held to be the ones who gave to the house, and continued to give to it, that reputation, for the house is void of life and could not make for itself a bad reputation.

The case of *McClean v. New York Press Co.*, 19 N. Y. Supp. 262, is very similar, in many respects, to the case under consideration. The publication there charged that No. 234 West Twenty-Ninth street, in New York City, was disorderly. In that case the same question was raised as is raised in this case; that is, that the libel was of the thing—the house—and not of a person. Addressing itself to this point the court said: "It is manifest the point is not well taken. The phrase used, it is true, is 'disorderly house,' but a house cannot be disor-

derly; it refers entirely to the character of the occupants; and it is their character which fixes the character of the thing. When, therefore, a house is spoken of as disorderly, or as a bawdyhouse, or as disreputable, it is that the occupants, are disorderly, or lewd persons, or are disreputable. It is idle in a charge of this kind to talk about it being a libel of the house when a house is called disorderly."

We are of the opinion that the publication in question was "of and concerning" the plaintiff, who resided in the house in question.

In the case of *Iron Age Publishing Co. v. Crudup*, 85 Ala. 520, 5 South. 332, this court said: "The definitions of libel, as found in the cases, vary somewhat in phraseology, and are more or less comprehensive, as may be called for by the particular charge involved in the case. Generally any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel, which charges an offense punishable by indictment, or which tends to bring an individual into public hatred, contempt, or ridicule, or charges an act odious and disgraceful in society. This general definition may be said to include whatever tends to injure the character of an individual, or blacken his reputation, or imputes fraud, dishonesty, or other moral turpiture, or reflects shame, or tends to put him without the pale of social intercourse."

The published words did not, it is true, charge the plaintiff, or any member of his family, with an indictable offense; but, giving to the publication the meaning that the words employed generally and fairly import, it tended to subject the plaintiff, the head of the house, to public hatred, contempt, or ridicule, and tended to reflect shame upon him, and to put him without the pale of social intercourse. This being true, the words were

libelous per se.—*Trimble v. Anderson,* 79 Ala. 514; *Iron Age Publishing Co. v. Crudup,* 85 Ala. 519, 5 South. 332.

And, as we have above pointed out, the words, when published, were a libel upon the plaintiff. No one could doubt that the neighbors and friends of plaintiff, on reading this account of the shooting of Brennan, would conclude that the libel was directed to the plaintiff. It is not necessary that all the citizens of Birmingham should understand the libel, or know that the shooting occurred at plaintiff's house; it is sufficient that those who knew could understand that he was the person meant.—Adger, Libel & Slander, p. 567; *Petsch v. St. Paul Dispatch Printing Co.,* 40 Minn. 291, 41 N. W. 1034.

It is also objected that the complaint is faulty, in that punitive, as well as special, damages are claimed, and it is not averred that a demand for retraction was made before the institution of the suit, and that there was failure on the part of the defendant company to retract. The case of *Comer v. Age-Herald Publishing Co.,* 151 Ala. 613, 44 South. 673, 13 L. R. A. (N. S.) 525, is cited in support of this contention. There is no merit in this contention. The law in force at the time the Comer suit was brought (Acts 1899, p. 32) is not the law now in force on this subject. The change is wrought by section 3750 of the Code of 1907. Assuming, without deciding, that the matter published was proper for public information, the failure to demand retraction is now, under the law, defensive matter. The Act of February 20, 1899, inhibited the institution of suits for libel brought against a publisher of a newspaper, unless a demand for retraction was made before the institution of the suit. This court, in *Comer's case, supra,* held that this inhibition did not prohibit the bringing of suits for the recovery of actual damages. There is no inhibition

against bringing a suit to recover damages, under the law now in force, without first having made a demand for retraction, but simply a denial to the plaintiff of the right to recover punitive damages unless such demand was previously made.—Code 1907, §§ 3750, 3751.

Assuming further, without deciding, that the plaintiff has failed to state a cause entitling him to punitive damages, but to actual damages, the proper way to get rid of the improper demand is not by demurrer, but by motion to strike, objections to the evidence, or special instructions to the jury.—*Western Union Telegraph Co. v. Garthright,* 151 Ala. 413, 44 South. 212; *Hayes v. Miller,* 150 Ala. 621, 43 South. 818, 11 L. R. A. (N. S.) 748, 124 Am. St. Rep. 93; *Woodstock v. Stockdale,* 143 Ala. 550, 39 South. 335, 5 Ann. Cas. 578.

After a careful consideration of this case, we are of the opinion, and so hold, that the defendant's demurrer should have been overruled, and that in failing to so rule there intervened error for which the judgment of the court below must be reversed.

Reversed and remanded.

McCLELLAN, SAYRE, and SOMERVILLE, JJ., concur.