## KIRKPATRICK v. JOURNAL PUB. CO. et al. (7 Div. 247.)

(Supreme Court of Alabama. June 8, 1922. Rehearing Denied June 30, 1922.)

**1. Libel and slander ⬤�19986(4)—Sustaining demurrer to complaint not error, where colloquium and innuendo extended the fair import of the words.**

The sustaining of a demurrer to certain counts of a complaint for slander was not error, where the colloquium and innuendo employed in the counts extended the general and fair import of the words of the alleged publication of which complaint was made, and from which injury was sought to have been shown.

**2. Libel and slander ⬤�19980—Complaint, alleging that publication charging certain disgraceful acts in plaintiff's house tended to blacken her reputation held sufficient.**

Counts of a complaint, alleging that the house mentioned in the alleged defamatory publication as the home of plaintiff, was at the time, a long time prior, and is now plaintiff's residence, and that the publication charges acts odious and disgraceful to society, and tended to bring plaintiff into contempt, ridicule, and disgrace, to injure her character and reputation, and put her without the pale of social intercourse, was not subject to demurrer.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Action for libel by Mrs. M. J. Kirkpatrick against the Journal Publishing Company, C. A. Berbeck, A. W. McCulloch, and W. I. Martin. After order sustaining demurrers to the complaint, plaintiff suffered judgment, and appeals. Reversed and remanded.

The plaintiff claims damages of the defendants "for falsely and maliciously publishing of and concerning her in a newspaper published at Gadsden, Ala., called the Gadsden Evening Journal, the following matter with intent to defame the plaintiff to wit:

"Big Hauls are Made by Raiding Officers on Sunday Afternoon.

"Amazing Conditions of Lawlessness are Brought to Light.

"Old Days Recalled. Home of Louella Kirkpatrick, Alabama City, Richly Furnished. Woman is Caught. Dragnet Also Gets Attalla Druggist and Three Others. Armed with search warrants signed by Judge W. I. Grubb of the United States Court, federal prohibition enforcement agents and deputy sheriffs made several spectacular raids in Alabama City and Attalla yesterday afternoon and succeeded in rounding up a druggist and three others in the latter place, while in Alabama City they brought to light amazing conditions of lawlessness. The raids were conducted by United States Deputy Marshal R. P. Ferguson and J. C. Stanford and Deputy Sheriffs W. B. Watson and Joe Gramling. In Alabama City they smashed through

two doors of the house of Louella Kirkpatrick only to find her calmly emptying a pitcher of whiskey into a sink. The pitcher and some of the whiskey it contained were secured as evidence. In a feed house on the woman's premises they found one 20-gallon keg and one 10-gallon keg that had recently contained whiskey. In her garage they found three 5-gallon kegs. In the backyard were fully twenty-five 5-gallon jugs. In the house were four cases of empty pint bottles. The officers also found a funnel and a measuring cup, everything reeking with the smell of whiskey. One of the United States deputies said that the house was a revelation to him. It is furnished in mahogany, velvet and silk and there is a display of gilded finery on every hand. He said that five women are inmates of the place besides the mistress and that one of them told him that they were all sisters. The raiders broke into the home of Myrtle Williams, sister-in-law of Arthur Snyder, and just as they were going inside they caught her pouring whiskey from a jug to the ground. She is alleged to have had kegs .and jugs lying about her yard. Just prior to the raid it is alleged she made a sale to an agent of the government. In Attalla the officers placed G. W. Stewart of the Stewart Drug Company under arrest and he will be given a preliminary hearing before Commissioner Pickard on the charge of violating the Volstead Act. The raiders sent a man ahead of them to buy a bottle of 'ginger' which was reported to have a high alcoholic content. They followed with a search warrant and took away a two-gallon bottle of 'tincture of ginger' which the label said contained 92 per cent. of alcohol. The stuff was manufactured by R. H. Mulford & Co., Philadelphia and is branded as a U. S. P. preparation. There is a separate label on the bottle containing a warning that the 'tincture' was made with 'nonbeverage alcohol' and that its sale for beverage purposes subjects the vendor to serious penalties. The home of Jess Waller and Rosa Truss, negroes, was raided and both were placed under arrest on two charges of violating the 'prohibition law. Waller was also arrested on the charge of carrying concealed weapons. Body Fleming, a young white man was arrested on two charges of selling whiskey. He went before Commissioner Pickard yesterday ·afternoon and plead guilty. He was ordered held to the United States grand jury. Both state and federal warrants were sworn out against all of the parties. The officers stated that they had information that the Kirkpatrick woman ran her place almost wide open. They had seen nothing like it in all of their rounds in North Alabama. They were told that she sold liquor by the drink, sometimes as high as $1 a drink. Generally it cost a man $2, for there was always a woman hanging around to be treated or to inveigle a man into buying more booze. 'It looked to me like one of those old-time gilded palaces,' Deputy Ferguson said, 'only a little worse.'"

The several counts aver that the house mentioned in the publication was and is the home of the plaintiff, where she resides with her four daughters.

The inducement and colloquium averred in

the first three counts are to like effect, it being alleged that the meaning of the publication was that plaintiff's home was a bawdyhouse, that her daughters were lewd women, and that her home was a bawdyhouse where liquors were sold.

Counts A, B, and C, added by amendment, declare upon the same matter, and aver that—

"Said house mentioned in said false, libelous and defamatory publication as the 'home of Louella Kirkpatrick' was at the time, a long time prior thereto, and is now plaintiff's residence were she lived with her family consisting of, to wit, herself and four daughters; that said publication charges acts odious and disgraceful to society and tended to bring plaintiff into contempt and ridicule and disgrace, and to injure her character, blacken her reputation, reflect shame upon her, and to put her without the pale of social intercourse, and by it plaintiff's name has been associated with negroes and others as violators of the criminal laws of the state, and plaintiff has been greatly humiliated, disgraced," etc.

Brown & Denson, of Birmingham, for appellant.

The imputation of a disorderly character to a house is actionable on the ground that it is a defamation of the reputation of the owner or tenant thereof. 184 Ala. 513, 63 South. 980, 51 L. R. A. (N. S.) 401, Ann. Cas. 1916B, 753. The charge that one keeps an open house is sufficient to support an innuendo that the intent was to charge the keeping of a house of ill fame. 17 R. C. L. 278; 62 Vt. 418, 19 Atl. 977. A publication charging one with selling liquor in a prohibition territory is libelous per se, and actionable. 17 R. C. L. 279; 125 Tenn. 437, 145 S. W. 159, Ann. Cas. 1913C, 316.

E. O. McCord & Son and Goodhue & Goodhue, all of Gadsden, for appellees.

In order that an article published in a newspaper shall be held to be libelous as to a particular person, it is necessary that the language should be such that persons reading it should, in the light of surrounding circumstances, be able to understand that it referred to such person. 33 Kan. 441, 6 Pac. 553; 63 South. 241; 83 Mich. 203, 47 N. W. 123, 21 Am. St. Rep. 595; 87 N. Y. 231; 155 Ky. 479, 159 S. W. 994, 48 L. R. A. (N. S.) 355.

THOMAS, J. The plaintiff's cause of action was originally declared in counts 1 to 4, inclusive; and counts A and B were added by way of amendment after demurrer was sustained to said original counts. After such demurrer was sustained to counts A and B, count C was added, to which, also, demurrer was sustained. Plaintiff refused to plead further, and suffered judgment.

The law of libel has been given full expression by this court, and will not be repeated. Iron Age Pub. Co. v. Crudup, 85 Ala. 519, 520, 5 South. 332; Fitzpatrick v. Age-Herald Pub. Co., 184 Ala. 510, 63 South. 980, 51 L. R. A. (N. S.) 401, Ann. Cas. 1916B, 753; Age-Herald Pub. Co. v. Waterman, 188 Ala. 272, 66 South. 16, Ann. Cas. 1916E, 900; Hendrix v. Mobile Register, 202 Ala. 616, 81 South. 558. The question whether an individual member has a right of action for defamation of a class or a group to which he belongs has been the subject of discussion by the courts.

"If the language is so used as unerringly to point to plaintiff, his right of action is not affected by the fact that it is also applicable to others; and, although the language may not on its face refer to the plaintiff, he may maintain his action if he can establish its application to himself" by proper inducement or colloquium contained in the count and by proof of the same. Levert v. Daily States Pub. Co., 123 La. 594, 49 South. 206, 23 L. R. A. (N. S.) 726, 131 Am. St. Rep. 356; Lathrop v. Sundberg, 55 Wash. 144, 104 Pac. 176, 25 L. R. A. (N. S.) 381; Palmerlee v. Nottage, 119 Minn. 351, 138 N. W. 312, 42 L. R. A. (N. S.) 870; Hyatt v. Lindner, 133 La. 614, 63 South. 241, 48 L. R. A. (N. S.) 256.

[1, 2] There was no error in sustaining demurrer to counts 1 to 4, inclusive, as the colloquium and innuendo employed in said counts extended the general and fair import of the words of the averred publication of which complaint is made, and from which injury is sought to be shown to have resulted to plaintiff. The sustaining of demurrer to counts A and B and C was not in consonance with the rule of Fitzpatrick v. Age-Herald Pub. Co., supra, where it was held that a publication in a newspaper account of an affray, to the effect that "the shooting occurred on Avenue E, between Eleventh and Twelfth streets, in a house which bears a bad reputation with the police," was defamatory of one who, at the time and for a long time prior thereto, occupied the house in question with his family, as a residence; and that it was not merely a libel of the house itself, apart from its occupants (184 Ala. 515, 63 South. 981, 51 L. R. A. [N. S.] 401, Ann. Cas. 1916B, 753). The court said:

"The house acquires whatever reputation it has from the occupants thereof; it can make or earn none for itself; it can and does reflect only the reputation of its occupants, or those who frequent it. We know of no way by which a house can, of its own act, acquire a reputation. This being true, when we speak of a certain house as being disorderly, we must necessarily be understood as referring to the conduct of those who live in, or who frequent, the same by and with the permission of the occupants. When, therefore, it is said of a house: 'It has a bad reputation with the police,' we refer to the head of the house, and, in fact, we reflect upon each member of the same. The language of the publication is, 'The shoot-

ing occurred on Avenue E between Eleventh and Twelfth streets, in a house which bears a bad reputation with the police.' This charges that, at the present time, the house bears a bad reputation with the police; and, under the plaintiff's averment, it was at that moment of time, and had been for a long while prior thereto, the place where he and his family resided. This reflected upon the plaintiff, for he and his family must be held to be the ones who gave to the house, and continued to give to it, that reputation, for the house is void of life and could not make for itself a bad reputation."

It was further held that, while the published words did not charge the plaintiff or any member of his family with an indictable offense, yet—giving to the publication the meaning that the words employed generally and fairly import—as it tended to subject the plaintiff to public hatred, contempt, or ridicule, and tended to reflect shame upon him and put him without the pale of social intercourse, the words used were libelous per se.

The court also held that it was not necessary that every reader of the article should understand the libel or know that the shooting occurred at plaintiff's house; but that it was sufficient that the neighbors and friends of plaintiff could understand that he was the person meant.

The judgment of the circuit court is reversed for the error in sustaining demurrer to counts A, B, and C, added by way of amendment, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.