Elmergreen v. Horn, 115 Wis. 385.

---

ELMERGREEN, Appellant, vs. HORN, Respondent.

*September 23—October 21, 1902.*

*Libel: Calling a physician a "quack": Court and jury.*

In a newspaper article plaintiff, a physician, was spoken of as
"'Doctor' E., the spick and span practitioner," and, referring
to an endeavor by him to correct a report as to a political ad-
dress, it was said that the writer did not know or care what
was in fact said by the speaker, but "Sufficient be it that we do
not look to a quack to set us right in the matter." *Held* that,
as matter of law, the term "quack" was used with reference to
the plaintiff in his professional capacity, and hence that the
article was libelous *per se.*

APPEAL from a judgment of the circuit court for Ozaukee county: JAMES J. DICK, Circuit Judge. *Reversed.*

Action to recover damages. This is the substance of the complaint:

Plaintiff is and has been for many years a practicing physician, fully qualified, under the laws of this state, to pursue his profession therein. Defendant, on October 31, 1900, maliciously composed and published in a newspaper called the "Cedarburg News," of which he was the editor, publisher, and proprietor, at Cedarburg, Wisconsin, of and concerning the plaintiff in his capacity as a physician and surgeon, the following false, libelous, and defamatory words:

"Mr. Weisse may as well give up the fight against dear Samivel. We had supposed that Weisse had at least a fighting chance, if not an absolutely sure thing. But here comes 'Doctor' *Ralph Elmergreen,* the spick and span practitioner, who says that it's all off, and that all the powers of hades can't prevent Sam's re-election. The burden of the doctor's refrain is vindication—for Sammy. It appears that some untruthful Democrat misquoted Sam's Hartford speech—particularly that portion of it concerning the regulation of trusts. We do not know what Barney said about trusts; neither do we care. Sufficient be it that we do not look to a quack to set us right in the matter. But listen to the doctor: 'His (Barney's) old-fashionness is of the Abe Lincoln type. He is a patriot, not a partisan. He never stoops to misrepresentation, exaggeration or trickery to gain votes. Mr. Barney is an honest man, a sincere man,' etc., etc., *ad nauseam,*"

whereby plaintiff was injured in his reputation, good name, and credit as a physician to his damage in the sum of $5,000, for which he demands judgment with costs.

Defendant answered admitting all the allegations of the complaint except that as regards malice. Evidence was produced on behalf of defendant on the trial, to the effect that he knew, when he published the article, that plaintiff was a physician and surgeon, but that he had no intention of injuring him in his professional capacity. There was also evidence in

·defendant's behalf in regard to the various dictionary definitions of the word "quack." Upon the pleadings and such evidence, the court ruled that it was doubtful whether the term "quack" was used in the article with reference to plaintiff in his professional capacity. Accordingly the court refused to .give instructions to the jury requested by counsel for plaintiff, in effect withdrawing from the consideration of the jury the question of whether the meaning of the article was that the plaintiff was a quack doctor. That question was submitted to the jury with lengthy instructions, and they were informed that if they found in plaintiff's favor in regard to the matter, he was entitled to recover. Exceptions were taken to the court's refusal to. give the instructions requested as aforesaid. The verdict of the jury was for the defendant. Judgment was accordingly rendered, dismissing the complaint with costs.

For the appellant there was a brief by *Barney & Kuechenmeister,* attorneys, and *H. B. Schwin,* of counsel, and oral ·argument by *S. S. Barney.*

*Rublee A. Cole,* for the respondent.

MARSHALL, J. The exception to the court's refusal to instruct as requested, in effect taking away from the jury the question of whether the article complained of was libelous *per se,* is all that need be considered. It was correctly ruled that to speak of a physician in his professional capacity as a "quack" is to call him a mere pretender, a person boasting of attainments he does not possess, and is libelous as a matter of law; so the argument here on that subject was unnecessary on the part of appellant. It was further correctly ruled, as ·conceded by appellant's counsel, that in a case of this kind, if there are conflicting reasonable inferences as to whether the alleged libelous language should be understood in a libelous sense, the right of the matter must be determined by a jury. The court concluded that there was such a conflict in this case,

and that appellant was entitled to recover if such conflict were settled in his favor. So it follows, necessarily, that if such conclusion cannot be supported, the judgment must be reversed.

Candor compels us to say that we cannot discover any doubt, approaching the boundaries of reason, as to whether the term "quack" was used with reference to plaintiff in his capacity as a physician and surgeon. Look at the words, "Here comes 'Doctor' *Ralph Elmergreen,* the spick and span practitioner." Note the significance of the inclosure of the word "Doctor" in quotation marks, indicating that the writer wished to dignify the plaintiff by the title of doctor in no other sense than that he was so called or held himself out to the world as such. Note the explanatory words immediately following the words " 'Doctor' *Ralph Elmergreen,* the spick and span practitioner." Do they not indicate a clear purpose to speak of appellant as a pretender, a person depending upon his appearance and assumption to be a doctor and not upon his qualifications as such. That is followed by language indicating that appellant had endeavored, by some publication, to correct a report deemed by him to be false as to what was said by Mr. Samuel Barney, the candidate for Congress, in a political address delivered by him. In connection with an expression to the effect that the writer did not know or care what Barney in fact said, occurs this: "Sufficient be it that we do not look to a quack to set us right in the matter." Taking the language all together, with the same certainty as it refers to plaintiff as a doctor, it refers to him as a quack doctor, as a mere pretender in his profession, a person not possessing the skill of a reputable practitioner of medicine, though assuming to have such skill.

We must look to the words under consideration in their plain and popular sense, since there is nothing to indicate that they were liable to be otherwise generally understood. In testing the language of an alleged libelous article to dis-

cover whether it is such in fact, the common, ordinary meaning of the words thereof is deemed to be the true meaning, upon the theory that such meaning, in all reasonable probability, was the one suggested to the persons who read it. *Campbell v. Campbell,* 54 Wis. 94, 11 N. W. 456; *Schild v. Legler,* 82 Wis. 74, 51 N. W. 1099; *Pandow v. Eichsted,* 90 Wis. 298, 63 N. W. 284.

Now it seems to us that it would be a waste of time to multiply words in demonstrating that the only meaning suggested by reading the article in question is that appellant was referred to therein as a quack doctor. If the learned circuit judge had not considered the matter doubtful, we should feel that one could not seriously present it for consideration from the standpoint of respondent. That the court erred in submitting the primary question of respondent's liability to the jury, we regard so clear that we are not justified in saying more.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded for a new trial.