[No. 5329.    Decided April 7, 1905.]

Anna McClure *et al., Appellants,* v. Review Publishing Company, *Respondent.*[1]

Libel and Slander—Pleading—Complaint—Requiring Newspaper Articles to be Set Out in Full.    In an action for libel in the publication of newspaper articles, it is proper to require the complaint to be made more definite and certain by setting out the articles in full, since the full meaning of the objectionable parts can be ascertained only when construed in connection with the whole.

Libel and Slander—Newspaper Account of Arrest and Prosecution—Express Malice—When Necessary.    A series of newspaper articles purporting to be a statement of the acts, theories, and representations of law officers relating to the pursuit, arrest, trial, and acquittal of the plaintiff, who was charged with burglary, are not libelous *per se,* and are qualifiedly privleged, where there

[1]Reported in 80 Pac. 303.

was no statement as to plaintiff's guilt or imputing to her the commission of crime, when construed with reference to the whole text; and the defendant is not liable in the absence of an allegation of express malice.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered January 12, 1904, upon sustaining a demurrer to the complaint, dismissing an action for libel. Affirmed.

*J. A. Sanders,* for appellants, to the point that the articles were libelous, cited *Usher v. Severance,* 20 Me. 9, 37 Am. Dec. 33; *Whitney v. Janesville Gazette,* Fed. Cas. No. 17,590; *Republican Pub. Co. v. Conroy,* 5 Colo. App. 262, 38 Pac. 423; *McAllister v. Detroit Free Press Co.,* 76 Mich. 338, 43 N. W. 431, 15 Am. St. 318; Townsend, Slander and Libel (4th ed.), § 112; *Bishop v. Journal Newspaper Co.,* 168 Mass. 327, 47 N. E. 119. Newspaper articles are not privileged merely because published in good faith as news. *Mallory v. Pioneer Press Co.,* 34 Minn. 521, 26 N. W. 904; *Wilson v. Fitch,* 41 Cal. 363; *McLean v. New York Press,* 64 Hun 639, 19 N. Y. Supp. 262; *Schuyler v. Busbey,* 63 Hun 474, 23 N. Y. Supp. 102; *Heyler v. New York News Pub. Co.,* 24 N. Y. Supp. 499. A direct charge of crime is not necessary. *Haynes v. Spokane Chronicle Pub. Co.,* 11 Wash. 503, 39 Pac. 969; *Democrat Pub. Co. v. Jones,* 83 Tex. 302, 18 S. W. 652; 18 Am. & Eng. Ency. Law, 972.

*H. M. Stephens,* for respondent, contended, *inter alia,* that the facts stated are substantially true, and therefore not libelous. *Leghorn v. Review Pub. Co.,* 31 Wash. 627, 72 Pac. 485; *Hall v. Elgin Dairy Co.,* 15 Wash. 542, 46 Pac. 1049; *Conner v. Standard Pub. Co.,* 183 Mass. 474, 67 N. E. 596; *Jackson v. Pittsburgh Times,* 152 Pa. St.

406, 25 Atl. 615, 34 Am. St. 659; *The Press Co. v. Stewart,* 119 Pa. St. 584, 14 Atl. 51.   None of the articles charge any crime.   *Haynes v. Spokane Chronicle Pub. Co.,* 11 Wash. 503, 39 Pac. 969.   The articles were qualifiedly privileged, and not libelous unless published with express malice.   *Metcalf v. Times Pub. Co.,* 20 R. I. 674, 40 Atl. 864, 78 Am. St. 900; *Beiser v. Scripps-McRae Pub. Co.,* 113 Ky. 383, 68 S. W. 457; *Boogher v. Knapp,* 97 Mo. 122, 11 S. W. 45; *Ross v. Ward,* 14 S. D. 240, 85 N. W. 182, 86 Am. St. 746; *Howard v. Dickie,* 120 Mich. 238, 79 N. W. 191; *Kimble v. Kimble,* 14 Wash. 369, 44 Pac. 866.   Nor unless published without probable cause. *Abbott v. Thorne,* 34 Wash. 692, 76 Pac. 302, 101 Am. St. 1021; *Henry v. Moberly* (Ind. App.), 51 N. E. 497; *O'Rourke v. Lewiston Daily Sun. Pub. Co.,* 89 Me. 310, 36 Atl. 398; *Boucher v. Clark Pub. Co.,* 14 S. D. 72, 84 N. W. 237; *Hebner v. Great Northern R. Co.,* 78 Minn. 289, 80 N. W. 1128, 79 Am. St. 387.   There being no allegation of malice in fact, the demurrer was properly sustained.   *Strode v. Clement,* 90 Va. 553, 19 S. E. 177; *Bearce v. Bass,* 88 Me. 521, 34 Atl. 411, 51 Am. St. 446; *Lowrimore v. Palmer Mfg. Co.,* 60 S. C. 153, 38 S. E. 430; *McDavitt v. Boyer,* 169 Ill. 475, 48 N. E. 317; and cases *supra.*

DUNBAR, J.—This is an action to recover damages for alleged libelous articles, published of and concerning the plaintiff Anna McClure, in respondent's newspapers, the Daily Spokesman-Review and the Twice-a-Week Spokesman-Review.   The plaintiffs, on their own motion, amended the original complaint, and, as amended, defendant moved to make the same more definite and certain by furnishing or incorporating in it copies of the entire articles in which the alleged libelous matter appeared.   This mo-

tion was sustained, and an exception taken to the court's ruling.    The second amended complaint was filed, incorporating the entire articles complained of.    This complaint was demurred to, on the ground that it did not state a cause of action.    The demurrer was sustained, the plaintiffs declined to further plead, the court gave judgment dismissing the action, and for costs, and from such judgment this appeal is taken.

The first error assigned is the action of the court in sustaining the motion to make the complaint more definite and certain.    We do not think the court committed error in this respect.    An alleged libelous newspaper article, like every other article, agreement, or instrument in writing, the meaning of which has to be ascertained, must be construed in connection with, and with reference to, the entire article, and no intelligent construction can be obtained by a perusal of excerpts or disconnected extracts from the publication.    In this case the complaint objected to simply extracted, from the articles published, certain words and lines which it alleged to be libelous.    A glance at the said words and lines, when presented in their proper connection with, and in relation to, the whole article, shows the futility of undertaking to justly construe these words and lines, segregated from the article as a whole.    We do not think that the authorities which are cited by the appellants sustain their contention, but that the rule which we have announced is universal.

The amended complaint presented four articles which were alleged to be libelous, or rather three articles, one of them having been published in the Spokesman-Review and also in the Twice-a-Week Spokesman-Review.    The articles as published were as follows:

Article of December 14, 1901:

*"QUEEN OF BURGLARS.*
*"Remarkable Charge Against Mrs. McClure of the*
*Calispel Valley.*
*"ARRESTED WHILE MILKING.*
"TACOMA CHIEF OF POLICE WENT INTO THE WILDS IN
SEARCH OF FLORA DUBOIS.

"After weeks of hard work by detectives, Mrs. William
McClure, who is said to have the stage name of Flora Du-
bois, and *who is wanted at Tacoma on the charge of bur-*
*glary,* was arrested at her little log house in the wild
country of Calispel valley, Stevens county. The arrest
was made by Chief of Police Fackler of Tacoma, in com-
pany with Detective Macdonald of the local police force,
on Thursday morning. She asserts her innocence.

"She was brought to Spokane yesterday morning by the
officers over the Great Northern, her husband accompany-
ing. William McClure, the husband, is a prominent
rancher of the Calispel country. After two hours here
they left on the Northern Pacific for Tacoma, the woman
still in custody.

"STRANGE AND ROMANTIC.

"Strange and romantic has been the history of Mrs.
William McClure, otherwise known as Flora Dubois,
actress and variety girl. Originally from the east, she
drifted early in life to the western vaudeville stage, re-
maining in this career 18 years. She had started it at 12.
Sometime during this interval McClure met the actress,
was enamoured, and married her.

"For a time Mrs. McClure lived quietly on the little
Calispel dairy farm, and then, it is said, *the restraints of*
*rural life grew too great, memories of the past crowded in,*
*and she left for Tacoma, where, according to the police*
*and press of that city, she entered on a different career to*
*any followed hitherto—that of a leader and organizer of*
*burglars.*

"It is alleged that for a time Flora Dubois—she had
resumed her old stage name—was queen over a class of
men like these, and that a series of startling burglaries, so
well manipulated that detection was found impossible, was

*the result. Then a clue leaked out, Tacoma detectives
got on the trail and began to close in, and it is said the
Dubois woman left for the tranquillity of her Calispel
home again.*

"In the meantime in Tacoma, one of the gang had been
arrested. Charles E. Jackson was his name, and when
taken to police headquarters and confronted with evidence
Jackson weakened and gave away the system. It is said
he incriminated with himself and a man named Leckie,
the picturesque Flora Dubois, whose then whereabouts
was unknown. Jackson is still in Tacoma jail, pending
developments in the case. With him is Leckie.

"Hearing she had gone to Spokane, Chief Fackler, of
the Tacoma police department came here in person, only
to find Mrs. Dubois had gone north. Fackler, too, went
north with the above result. Officer McDonald had pre-
viously been working on the case. The following descrip-
tion of the arrest and particulars is given by Detective
McDonald of the local force:

"Arrested While Milking.

*"We found our woman amid the pastoral scenes of the
Calispel valley milking cows.* It was a peculiar scene.
McClure claims to have been an editor of the New York
Journal at one time, and it was a strange scene to see
an actress and an editor far from centers of population
in northern Washington, *the woman wanted as a profes-
sional thief and the man bound to protect her.* She did
not take the arrest hard, but said she could prove a clear
case of innocence. During October and November, when
the burglaries of Tacoma were committed, she claims to
have been doing a variety stunt in Victoria, B. C. *We
were accorded permission to make a full search of the
house,* but none of the missing jewelry could be found.
They were living alone in a small log cabin surrounded
by stock of all kinds.

"Mrs. McClure is about 30 years old, of dark complex-
ion and a handsome woman. She is medium height, com-
paratively stout, with clear cut French features. She bears
up well under the situation."

Article of December 16, 1901:

## "MYSTERY OF FLORA DUBOIS.

*"Alleged Young Woman Burglar Is Identified.*

"Tacoma, Wash., Dec. 15.—The preliminary hearing of Flora Dubois, or Williams, the handsome young woman charged with receiving the goods stolen by a gang of burglars that worked various north end residences during November, will occur in the police court Tuesday. The men who are supposed to have committed the actual burglaries will be up tomorrow.

*"The man Jackson has confessed to the crimes, and today positively identified the woman.* His evidence will be an important factor in the cases against the woman and the other men.

*"Jackson holds firmly to his original story, and is positive in his assertion that Flora Williams is the woman who was rooming in the Sherman House, where the trunk containing her photographs was found by the police after the occupant of the room had disappeared.* On the other hand, Mrs. Williams and her husband maintained that they can prove a complete alibi, Mrs. Williams not having been in this city for two years.

"The case against the woman depends upon the evidence of Jackson and the discovery of two of her photographs in the room Jackson said she had occupied."

Article of December 20, 1901:

## "MRS. M'CLURE RELEASED.

*"Supposed Burglar Queen Let Go By Tacoma Police.*

"SPOKANE OFFICERS WHO CO-OPERATED IN THE ARREST, MUCH INTERESTED IN THE DEVELOPMENTS IN THE CASE —LOOKS LIKE A CASE OF MISTAKEN IDENTITY—WHO MRS. McCLURE IS.

"The local police are much interested in the report that *Mrs. Laura McClure, who was arrested on a ranch near Usk, Stevens county, on the charge of having been the leader of a gang of burglars operating in Tacoma,* has been released, and another woman arrested and identified as the person really wanted.

"The Spokane police co-operated with Chief Fackler of Tacoma in arresting Mrs. McClure, and one of the de-

tectives went to Usk with him when the arrest was made. The Spokane police say that one of the suspected burglars arrested in Tacoma told Chief Fackler that in a certain room he would find a trunk containing stolen property. The room, the burglar declared had been occupied by the burglar queen.

"The detectives found the room and the trunk. In the trunk was a photograph of Mrs. McClure, who is a variety actress, and whose stage name is Flora Dubois. The man in jail identified the photograph as that of the female burglar, who was also said to be a variety actress. *After making inquiries among vaudeville performers Chief Fackler became satisfied that the woman he wanted was somewhere in Stevens county. He came to Spokane, and here made additional inquiries, which convinced him that the woman he wanted was at Usk. Thither he went, and there he found her, sure enough.*

"She was taken to Tacoma, protesting her innocence and her ability to prove an alibi. *The burglar identified her, it is said, as the woman from whom he formerly took orders in the art of burglary;* but others who knew the burglar queen declared she was not the woman, and the police evidently reached the same conclusion, for they have released her.

"Mrs. McClure is said to be a talented woman. Her husband, who is now a farmer, was formerly a New York newspaper man, and they are said to have a comfortable home at Usk. People who know Mrs. McClure say they are not surprised that she has been released, as they believe that a mistake was made. They say that if the real burglar queen was a variety actress it is not necessarily surprising that she had Mrs. McClure's picture in her trunk, or left it there when she fled from the room."

The italicised portions are the portions that are alleged by the appellants to be libelous. It would be profitless to enter into a minute analysis of any or all of these articles. The law of libel is well understood. The only question to be determined is whether there has been a sufficient charge of crime here to constitute the articles

libelous. It will be seen, by a perusal of the articles, that there was no statement on the part of the newspapers of whether or not the said plaintiff was guilty of the crime with which she was charged; nothing which can be construed as imputing to her the commission of the crime; but that it only purported to be a statement of the acts and theories and representations of the officers of the law in relation to the pursuit, arrest, trial, and acquittal of the plaintiff; and while undoubtedly certain expressions in each of the publications, if construed without relation to the rest of the article in which they appear, would be libelous, yet, if construed as they must be with reference to the whole text, the libelous character cannot be established. The articles are undoubtedly qualifiedly privileged. That being true, they are not libelous *per se,* and, no express malice being alleged, and there being nothing in the articles themselves, or in the circumstances surrounding their publication, to indicate malice—the desire evidently being only to publish sensational news in a sensational and somewhat flamboyant and embellished style, the publishers are not legally responsible in damages. We think, under the law announced by this court in *Kimble v. Kimble,* 14 Wash. 369, 44 Pac. 866; *Haynes v. Spokane Chronicle Pub. Co.,* 11 Wash. 503, 39 Pac. 969; *Hall v. Elgin Dairy Co.,* 15 Wash. 542, 46 Pac. 1049; *Urban v. Helmick,* 15 Wash. 155, 45 Pac. 747, and *Leghorn v. Review Pub. Co.,* 31 Wash. 627, 72 Pac. 485, that the demurrer to the amended complaint was properly sustained. This conclusion renders unnecessary a discussion or determination of the motion to dismiss.

The judgment is affirmed.

MOUNT, C. J., HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.