[No. 8005. Department One. October 4, 1909.]

## C. F. LATHROP, *Appellant*, v. JOHN C. SUNDBERG *et al.*, *Respondents.*[1]

LIBEL AND SLANDER—COMMUNICATIONS LIBELOUS PER SE. It is libelous *per se* for the physicians in an office building to sign and publish a petition to the owners of the building reciting that they as reputable physicians, desiring to uphold the honor of their profession, demanded the removal from the building of osteopaths . . . criminal practitioners . . . fakirs, quacks, charlatans and other fraudulent concerns and . . . undesirable tenants, intending to refer to the plaintiff, who was a duly licensed osteopath having an office in the building.

SAME—PRIVILEGED COMMUNICATIONS — INTEREST — ABUSE OF PRIVILEGE. Such a publication is not privileged from the fact of the interest of the parties; and the publication of the same in the newspapers would be an abuse of any privilege; also, an abuse in going beyond the necessities of the case.

Appeal from a judgment of the superior court for King county, Griffin, J., entered November 7, 1908, dismissing an action for libel, upon sustaining a demurrer to the complaint. Reversed.

*Willett & Willett*, for appellant.

*McBurney & Cummings*, for respondents.

FULLERTON, J.—This is an action for libel. In his complaint the appellant, who was plaintiff below, alleged that he was a regular graduate osteopath from a school of osteopathy, holding a doctor's degree as an osteopathic physician from such school; that at the time of filing his complaint he was, and for a long time prior thereto had been, practicing his profession in Seattle, in the state of Washington, having his office in the Eitel Building, in such city, which building was owned by the respondent Crane Realty Company; that on or about March 16, 1908, the respondents

[1]Reported in 104 Pac. 176.

published and circulated of and concerning him, in his business and professional capacity, a petition, addressed to the owners of the Eitel building, in the following words:

"We, the following reputable physicians and dentists, occupying offices in the Eitel building, endeavoring to uphold the honor and dignity of our professions and desiring to encourage only the best and most desirable tenants for our office building, and thereby conserve the best interests of the public at large, are most emphatically opposed to the indiscriminate rental of offices in this building to osteopaths, neuropaths, autopaths, chiropractors, uptomtereists, unprofessional masseurs, criminal practitioners, 'medical institutes', advertising 'specialists', patent medicine fakirs, quacks, charlatans and other fraudulent concerns. We therefore demand the removal of all such persons now holding offices in this building and the exclusion therefrom of all such undesirable tenants in the future."

He further alleged that the signers of the petition delivered a copy thereof with their names attached thereto to R. G. Shrader and the Crane Realty Company, and that these persons caused the same to be circulated and published. He then alleged that the respondents intended by the publication to, and did, charge him with being a quack and a charlatan in his profession, and with operating a fraudulent concern, and with being an undesirable tenant; and that such charges were false and untrue and were made wilfully, without just cause or excuse, and for the purpose of injuring and destroying the appellant's good name, and to expose him to hatred, contempt and ridicule, etc., and that by reason thereof, he has suffered damages in the sum of $75,000.

To the complaint a demurrer was interposed by the respondents, which the trial court sustained. The appellant thereupon elected to stand on the complaint, when a judgment of dismissal and for costs was entered against him. This appeal was taken therefrom.

The record does not disclose the ground upon which the trial judge sustained the demurrer to the complaint, but

10—55 WASH.

counsel in this court contend that it was properly sustained for two reasons; first, that the writing on which the action is founded is not libelous, and second, if it be held to be libelous, it must be held to be privileged.

That the writing is libelous *per se*, it has seemed to us there can be but little question. In order to constitute a civil libel *per se*, it is not necessary that the words published should involve an imputation of crime. It is enough that they be of such a nature that the court can presume, as a matter of law, that they will tend to disgrace the party of whom they are published, or hold him up to public ridicule, or contempt, or cause him to be shunned or avoided. 25 Cyc. 250 *et seq.* The published article in question here tends to do all this, if it does not tend to do more. It carries an insinuation that the appellant is not a reputable physician, or one endeavoring to uphold the honor and dignity of the profession; it classes him with criminal practitioners, patent medicine fakirs, quacks, charlatans, and other fraudulent concerns; it demands his removal from the building in which he has his office, as an undesirable tenant, and demands that in the future he be excluded therefrom. Clearly this is libelous *per se*, if published of and concerning the appellant and he is engaged in a reputable practice, and that it was published of and concerning the appellant and that his practice is reputable, was distinctly alleged in the complaint.

In *Elmergreen v. Horn,* 115 Wis. 385, 91 N. W. 973, the libel charged was the following:

"Mr. Weisse may as well give up the fight against dear Samivel. We had supposed that Weisse had at least a fighting chance, if not an absolutely sure thing. But here comes 'Doctor' Ralph Elmergreen, the spick and span practitioner, who says that its all off, and that all the powers of Hades can't prevent Sam's re-election. The burden of the doctor's refrain is vindication—for Sammy. It appears that some untruthful Democrat misquoted Sam's Hartford speech—. particularly that portion of it concerning the regulation of trusts. We do not know what Barney said about trusts;

neither do we care. Sufficient be it that we do not look to a quack to set us right in the matter. But listen to the doctor: 'His (Barney's) old-fashionness is of the Abe Lincoln type. He is a patriot, not a partisan. He never stoops to misrepresentation, exaggeration or trickery to gain votes. Mr. Barney is an honest man, a sincere man,' etc., etc., ad nauseam."

This was held not libelous *per se* by the trial judge, and an appeal taken from the ruling. Commenting thereon, the appellate court said:

"Candor compels us to say that we cannot discover any doubt, approaching the boundaries of reason, as to whether the term 'quack' was used with reference to plaintiff in his capacity as a physician and surgeon. Look at the words 'Here comes 'Doctor' Ralph Elmergreen, the spick and span practitioner.' Note the significance of the inclosure of the word 'Doctor' in quotation marks, indicating that the writer wished to dignify the plaintiff by the title of doctor in no other sense than that he was so called or held himself out to the world as such. Note the explanatory words immediately following the words 'Doctor' *Ralph Elmergreen,* the spick and span practitioner.' Do they not indicate a clear purpose to speak of appellant as a pretender, a person depending upon his appearance and assumption to be a doctor and not upon his qualifications as such. That is followed by language indicating that appellant had endeavored, by some publication, to correct a report deemed by him to be false as to what was said by Mr. Samuel Barney, the candidate for Congress, in a political address delivered by him. In connection with an expression to the effect that the writer did not know or care what Barney in fact said, occurs this: 'Sufficient be it that we do not look to a quack to set us right in the matter.' Taking the language all together, with the same certainty as it refers to plaintiff as a doctor, it refers to him as a quack doctor, as a mere pretender in his profession, a person not possessing the skill of a reputable practitioner of medicine, though assuming to have such skill."

So, in this case, while it is not directly charged that the appellant is a criminal practitioner, patent medicine fakir, quack, charlatan, or a fraudulent concern, he is classed with

them, and such is the evident meaning of the language employed.

The claim that the publication is privileged is equally without foundation. It is thought to be privileged because it was a communication concerning a matter in which the communicants had an interest and was made to another having a corresponding interest. But if the facts justified this contention, we think that the allegations of the complaint show such an abuse of the privilege as to justify a recovery if proven. The publication was not confined to the parties in interest. It was given to the newspapers and published to the world at large. The interests of the respondents did not require publication in this manner, and to so publish it was an abuse of the privilege. But, more than this, the communication itself went far beyond the necessities of the case. If the appellant's methods of practice were reputable, although disagreeable to the respondents, they have no interest which authorizes them to class him with disreputable practitioners, even in a communication that was otherwise privileged.

The complaint states a cause of action. The judgment appealed from is reversed, and remanded with instructions to reinstate the case and require the respondents to answer to the merits of the complaint.

RUDKIN, C. J., CHADWICK, GOSE, and MORRIS, JJ., concur.