[No. 8042. Department One. October 25, 1909.]

WILLIAM A. DENNEY, *Appellant*, v. NORTHWESTERN CREDIT
ASSOCIATION *et al.*, *Respondents.*[1]

LIBEL AND SLANDER—LIBEL PER SE—CREDIT REPORTS. The report
of a mercantile agency is not libelous *per se*, where it simply gave
plaintiff a rating which is stated not to be a credit rating, but that
the agency preferred to furnish information upon application at the
office; since the words are to be considered in their natural sense,
are innocent without the aid of special knowledge, and do not imply
malice, or hold the party up to public ridicule or involve moral
turpitude.

SAME—CREDIT REPORT TO COERCE PAYMENT. It cannot be said, as
a matter of law, that such a publication was made to extort money
or coerce payment of a debt held by the agency for collection so as
to make the same libelous *per se*, within the rule allowing a recovery
in the case of publications showing blackmail on their face.

SAME—SPECIAL DAMAGES—PLEADING. In order to render such a
publication actionable, the words not being libelous *per se*, the spe-
cial damages resulting from loss of credit must be specifically set
out, showing the names of parties refusing credit or withdrawing
custom, or that it is impossible to do so.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered March 8, 1909, upon sustaining
a demurrer to the complaint, dismissing an action for libel.
Affirmed.

*A. A. Howell*, for appellant.

*Gordon & Remann*, for respondents Andrews *et al.*

*Ellis, Fletcher & Evans*, for respondents Perkins *et al.*

CHADWICK, J.—We are asked to determine the sufficiency
of the complaint in this action. It is alleged, in substance,
that the defendant, the Northwestern Credit Association,
maintains a collection agency and had for collection an ac-
count against plaintiff; that a part of its business was to
give a commercial rating to individuals and firms; that the

[1]Reported in 104 Pac. 769.

Northwestern Credit Association published a book called the Northwestern Credit Book, also called the Confidential Credit Reference Book, which is distributed among its subscribers in the cities of Tacoma and Seattle, and that, among others, the name of plaintiff appears therein as follows: " 'C'. Wm. A. Denney, 3415 N. 26th st."; that a key appeared in the book a part of which is as follows:

"A Key to Rating. 'A', Generally prompt. 'B', Good, somewhat, slow. 'C', Inquire at office; it must be distinctly understood that this does not indicate a credit rating, but the information we have is such that in justice to the party and the association we prefer to furnish it upon application;"

that such publication was false and libelous and wilfully published by defendant association, being aided and assisted by the other defendants, for the purpose of coercing payment of a disputed account. Plaintiff further alleges that he has been refused credit and injured in his feeling and reputation, for all of which he claims general damages.

The trial court evidently sustained the demurrer of the several defendants upon the theory that the words published were not actionable *per se* and, for the want of an allegation of special damages, the complaint did not state a cause of action. The general rule is that all words alleged to be libelous should be considered by the court in their natural and obvious sense unless they be ambiguous. *Urban v. Helmick*, 15 Wash. 155, 45 Pac. 747. The office of the innuendo in pleading is to apply the libel to a person, or to connect such person with a place or thing of evil repute, and cannot be relied on to make words otherwise unobjectionable the basis of a recovery. 25 Cyc. 449-450; Newell, Slander & Libel, p. 619; Odgers, Libel and Slander, p. 106 *et seq.*; Townshend, Slander and Libel, § 335.

In all charges of this kind, it is the duty of the court to regard the words spoken or written as might a stranger to the parties, and if they be in themselves, and without the aid of the innuendo, otherwise innocent, and if they do not in

themselves, and without the aid of the special knowledge possessed by the parties concerned, imply malice, or hold the party out to public contempt or ridicule, or make any charge involving moral turpitude, or touch him in his business, or subject him to an infamous punishment, it is the general rule that they are not libelous *per se.* If the words do not come within this rule,

"It is necessary that the declaration should set forth precisely in what way the damage resulted from the speaking of the words. It is not sufficient to allege generally that the plaintiff has suffered special damages, or that the party has been put to great costs and expenses. . . . By special damage in such a case is meant pecuniary loss." *Pollard v. Lyon,* 91 U. S. 225, 237, 23 L. Ed. 308.

See, also, 5 Ency. Plead. & Prac., 766; 25 Cyc. 455; *Dun v. Maier,* 82 Fed. 169; *Bradstreet Co. v. Oswald,* 96 Ga. 396, 23 S. E. 423; *Newbold v. Bradstreet & Son,* 57 Md. 38, 40 Am. Rep. 426.

Within these rules we are constrained to hold with the trial court in the construction of the complaint now before us. In *Woodruff v. Bradstreet Co.,* 116 N. Y. 217, 22 N. E. 354, 5 L. R. A. 555, publication was made that a judgment had been rendered against the plaintiff. In this case the association did not give a credit rating, but indicated that in justice to plaintiff such information as it had with respect to his commercial standing would be furnished upon application to any interested subscriber. If sought, the fact would have been revealed that it held for collection a disputed account. In principle there can be no difference between these cases. The court of appeals in that case held:

"The meaning of words in an action of slander or libel cannot be extended by innuendo beyond their import, aided, as they may be, by extrinsic facts with which they are connected. Its use or purpose is to explain the application of words by connection with such facts and circumstances as are alleged. There are none alleged here which will justify the inference that the publication issued by the defendant carried with it any meaning essentially different than it would

have taken from any other source. The fact that its apparent authenticity may have been greater is not important. The information sought to be given by the report was that a judgment had been recovered against the plaintiff for the amount, and, as the consequence, he was charged by it with liability to that extent. That was what the defendant's subscribers were permitted, from its report, to understand had occurred. It might or might not make inquiry, preliminarily to further credit, desirable. That might depend upon the known or unknown pecuniary ability of the party. In its relation to parties generally, such would be the uncertainty of its effect; and it is the rule in its general application and effect, as to all persons in the class before referred to, that is now under consideration, because the publication of such a statement when untrue is libelous *per se* in all such cases or in none. The fact that in some cases it might result in the denial of credit, and otherwise be injurious to a party, represented to be charged with liability by judgment, does not necessarily require the conclusion, as matter of law, that the publication was in itself defamatory. But in such case the party would be entitled to his remedy, supported by special damages alleged as the consequence of the false publication. The recovery of a judgment does not necessarily import conceded default in payment of a debt. It is a matter of frequent observation that controversies, arising apparently out of an honest difference of opinion, go into the courts for determination. Litigation also not unfrequently comes from causes in which is involved no personal credit or default. There is nothing in the defendant's report to indicate that the judgment was produced by any cause prejudicial to the credit of the plaintiff, and there is no presumption in that respect upon the subject in aid of the action. There was nothing for the consideration of the jury bearing upon the question whether the publication was libelous, and we think the trial court properly held, as matter of law, that it was not such *per se*. The plaintiff, therefore, was not entitled to recover general damages; and, as no special damages were alleged, there was no question for the jury upon that subject."

Among the more prominent cases relied on by appellant is *Meutze v. Tuteur*, 77 Wis. 236, 46 N. W. 123, 20 Am. St. 115, 9 L. R. A. 86; *State v. Armstrong*, 106 Mo. 395, 16 S.

W. 604, 13 L. R. A. 419; *Sunderlin v. Bradstreet*, 46 N. Y. 188, 7 Am. Rep. 322, and *Woodhouse v. Powles*, 43 Wash. 617, 86 Pac. 1063, 117 Am. St. 1079, 8 L. R. A. (N. S.) 783. The two cases first referred to were cases where, under any known rule of law, the libels were actionable *per se*. The plaintiff in the one case, and the prosecuting witness in the other, had been made the victims of so-called bad debt collection agencies. The effort to blackmail was apparent. The envelopes in which their coercive demands were transmitted contained matter which the courts justly held actionable because of implied malice; their transmission through the mail, and coming thus under the eye of the public, being a sufficient publication to warrant a recovery. We find no like element in this case. In *Sunderlin v. Bradstreet* the court held that a publication, such as the one before us is alleged to be, was not privileged; and the *Woodhouse* case does not cover the question whether it is necessary to plead special damages in a case of this kind. It does, however, hold that a report that a party was delinquent when in fact he was not so, is not libelous *per se*. To this extent it bears us out in our present conclusion. Considering the whole case and the authorities cited by appellant, we are unable to say, as a matter of law, that the publication in this case was made for the purpose of extorting money or to coerce the payment of a disputed debt, so as to bring this case within the cases relied upon.

We do not want to be understood as holding that an association of this character can claim a report of this or any other kind to be privileged. Mercantile agencies are not above the law, and must answer for their conduct; but when charged as for a libel it must appear, when the words relied on are not actionable *per se*, that some pecuniary loss has been sustained. When a loss of credit and business is charged, the names of the parties who have refused credit or withdrawn their custom must be set out specifically, or a state of facts alleged showing this to be impossible. If the words are

not actionable *per se,* a direct traceable loss must be alleged. Otherwise the complaint is bad on demurrer.

This conclusion makes it unnecessary to discuss other questions raised in the briefs of counsel. Judgment is affirmed.

RUDKIN, C. J., GOSE, FULLERTON, and MORRIS, JJ., concur.