[No. 12700.  *En Banc.*  March 1, 1916.]

## CHARLES B. WOOD, *Appellant*, v. STAR PUBLISHING COMPANY, *Respondent.*[1]

LIBEL AND SLANDER—LIBEL PER SE—CHARGE OF CRIME—"BRIBERY" —SUFFICIENCY. A newspaper article headed "Bribery" and charging that one K. was offered a bribe in an appointment to a political job, that the offer was made at a certain office to which K. had been invited by plaintiff and that plaintiff was "one of the men present," the article inviting a prosecution for bribery by the prosecuting attorney, is not libelous *per se* as charging a crime and does not charge plaintiff with committing bribery.

SAME—LIBEL PER SE—PUBLIC HATRED AND CONTEMPT. Neither is such charge libelous *per se* as holding the plaintiff up to public hatred, contempt or ridicule, where, read twice, it merely leaves the impression that information could be obtained from plaintiff upon which to found a prosecution for bribery.

SAME—PLEADING—COMPLAINT—SUFFICIENCY—SPECIAL DAMAGES. A complaint for libel by an article not libelous *per se*, in which no special damages are alleged, is demurrable.

MAIN, MOUNT, and CHADWICK, JJ., dissent.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 30, 1914, upon sustaining a demurrer to the complaint, dismissing an action for libel.  Affirmed.

*Ballinger, Battle, Hulbert & Shorts*, for appellant.

*John H. Perry*, for respondent.

BAUSMAN, J.—The lower court sustained defendant's demurrer to the amended complaint of Wood, who alleges that defendant, in 1914, published in its "Star" an article both false and malicious, as follows:

### "BRIBERY"

"It's a short and ugly word.  Its meaning is plain.  And it is bribery which the anti-recall gang is employing to get withdrawal of signatures from the Hamilton recall petition.  The

[1] Reported in 155 Pac. 400.

Star has a case for you, Prosecuting Attorney Murphy. It's a case of bribery. William Knox, 312 First Ave. S., was offered a bribe last Saturday in the offices of the King county republican central committee, 402 Oriental building. One of the men present at the time, Charles B. Wood, invited Knox there by written letter. Knox was offered the bribe of a political job—the job of being named by Hamilton and Knudsen as a member of the election board in precinct 214 on primary day. Knox held the same position before. He was told he would get it again if he withdrew his signature from the Hamilton recall. Knox refused to be bribed.

"A few days ago, Deputy Prosecutor Ellis announced he would vigorously prosecute all fraud connected with the recall. Here is something worse, Ellis. Here is bribery. What are you going to do about it, Messrs. Murphy and Ellis?"

Not only is Wood not named as the person who offered a bribe, but it is no fair inference that the publisher meant as much. Indeed, plaintiff's counsel, conceding a doubt, sums up his case as follows:

"The reader may be confused as to just who it is that should be prosecuted, but he is impressed with the fact that the publisher of the article knows at least one man who was present at the meeting where the bribe was offered, and that that man was Charles B. Wood, and that he had invited Knox, the man to whom the bribe was offered, to the meeting."

Nor is bribery charged against anybody, for while the article cries out bribery to begin with, it proceeds to describe the thing that did occur with Knox, which, under our laws, could be no bribery of Knox at all. Rem. & Bal. Code, § 2320 et seq. (P. C. 135 § 135). Using the word "bribery" is of no moment when, at the same glance, the reader can see, or should know as law, that there was none. I may call my neighbor a thief, but if, at the same time, I say that he is a thief because he got his property from an ancestor who stole it in his lifetime, I have not charged him with being a thief himself.

It is past dispute in this state that a libelous article must be read as a whole; that it is for the court to say, as a matter

of law, whether the words constitute the charging of a crime and are, or are not, libelous *per se*, and that innuendo cannot reinforce simple words. *Urban v. Helmick*, 15 Wash. 155, 45 Pac. 747; *Velikanje v. Millichamp*, 67 Wash. 138, 120 Pac. 876; *McClure v. Review Pub. Co.*, 38 Wash. 160, 80 Pac. 303; *Denney v. Northwestern Credit Ass'n*, 55 Wash. 331, 104 Pac. 769, 25 L. R. A. (N. S.) 1021.

This case is far weaker than that of plaintiff in the *Velikanje* case, where it was held no libel to say that money was paid plaintiff on forged receipts, but was not also said that it was he who had forged them. The *McClure* case turned ultimately on the question of qualified privilege, but before the court got to that point it distinctly held that the articles in question had not charged plaintiff with committing a crime. Yet plaintiff's provocation in that case was apparently much greater than that of plaintiff here. The article denominated her as "Queen of Burglars," but read as a whole, it did not charge her with a crime.

We hold that the article in this case is not libelous *per se* as charging a crime. But it is contended that it at least holds Wood up to public hatred, contempt, and ridicule, which, under our decisions, would still make it libelous *per se* even though it charged no crime and even though he would not be affected in his calling, which is that of a state employee. This last is what we held in *Wells v. Times Printing Co.*, 77 Wash. 171, 137 Pac. 457.

But in this respect, too, we agree with the lower court. We do not think that this article held Wood up to contempt, hatred, or ridicule. In the *Wells* case, what the plaintiff complained of was his being charged with degrading the American flag, and his being a species of disreputable outcast on that account. Now in this article there is at most only, at first glance, a charging of Wood with the wrongdoing. Read twice, it leaves the impression that Wood was named as a person whom the prosecuting attorney could get information from, by whom would be exposed persons whom he knew to

have been with Knox. The thing charged as occurring in the committee room was no more than an attempt to induce the signer of a recall petition to withdraw his name by promise of support to a trifling political position.

The article not being libelous *per se*, and no special damages being pleaded, the demurrer was properly sustained.

Judgment affirmed.

PARKER and ELLIS, JJ., concur.

HOLCOMB, J. (concurring)—I concur upon the sole ground that the article, considered as a whole, charged Wood with no offense, either directly or by necessary implication.

As to whether the context of the publication charged some one with bribery, it was doubtless the intent of the article so to do, in most emphatic terms, but only failed because Knox, not being a public official, was not a bribable person under our law.

Had any person, however, been directly accused or plainly intended by innuendo of the acts related in the article, I think respondent would most assuredly have been amenable to an action for libel under our statute.

FULLERTON, J.—(concurring)—To use the language of the old books, libelous defamations of character are either actionable *per se* or actionable *per quod*. In the first class of actions, the jury is warranted in awarding the plaintiff substantial damages, even though there be no actual injury, on the mere proof of the publication of the defamatory words; the presumption of the law being that the necessary, natural and proximate consequence of the publication is to injure the defendant. In actions of the second class, the law indulges in no presumptions, and before a recovery can be had in such cases special damages, that is to say, damages arising from an actual injury to the person claimed to have been defamed, must be alleged and proven. This distinction has led the courts to scrutinize with care an alleged libelous publication,

and not to permit the publication to go to the jury as libelous *per se* unless it clearly is so.

Turning to the publication in question, I cannot conclude that it is so clearly libelous as to permit it to go to the jury as matter libelous *per se*. Plainly, to my mind, it does not charge the plaintiff with bribery, or attempted bribery. Nor do I think the charge is necessarily implied from the language used. All that is stated concerning the plaintiff is that he wrote the letter which induced the person attempted to be bribed to visit the central committee mentioned, and that he was present when the bribe was offered. This may be true or it may be false; but, as I say, it is not to charge the plaintiff with the commission of the crime there asserted to have been committed.

· I am aware that a publication may be libelous *per se* even though it does not charge the commission, or the attempted commission, of a crime, but that it is sufficient in this respect if its tendency is to expose the person of whom it is published to public hatred, contempt, ridicule or obloquy, or cause him to be shunned or avoided. *Lathrop v. Sundberg*, 55 Wash. 144, 104 Pac. 176, 25 L. R. A. (N. S.) 381. But I cannot think this rule in any way aids the present plaintiff. Here the charge is the commission of a crime, or it is not libelous. There is no language used which tends to expose him to public hatred, contempt, ridicule or obloquy, or cause him to be shunned or avoided, apart from the language thought to charge an attempt to commit the crime of bribery.

Since the complaint does not allege special damages, but is grounded on the theory that the publication is libelous *per se*, I am constrained to agree with the conclusion that it does not state a cause of action.

MORRIS, C. J., concurs with FULLERTON, J.

MAIN, J.—(dissenting)—In my opinion the complaint in this case states a cause of action, and the judgment of the superior court should be reversed. Even though the published

article upon which the complaint is based may not charge the commission of a crime, nevertheless it was libelous *per se* if it tended to disgrace Wood, or deprive him of the benefit of public confidence, or hold him up to public ridicule or contempt, or cause him to be shunned or avoided. *Lathrop v. Sundberg*, 55 Wash. 144, 104 Pac. 176, 25 L. R. A. (N. S.) 381; *Wells v. Times Printing Co.*, 77 Wash. 171, 137 Pac. 457.

In the *Lathrop* case, speaking upon this question, it was said:

"In order to constitute a civil libel *per se*, it is not necessary that the words published should involve an imputation of crime. It is enough that they be of such a nature that the court can presume, as a matter of law, that they will tend to disgrace the party of whom they are published, or hold him up to public ridicule, or contempt, or cause him to be shunned or avoided."

In the *Wells* case, the rule as stated in *Quinn v. Review Publishing Co.*, 55 Wash. 69, 104 Pac. 181, 133 Am. St. 1016, is paraphrased and stated with approval as follows:

"Matter libelous *per se* is defined as any publication which falsely and maliciously tends to bring an individual into public hatred, contempt, or ridicule, or charges an act odious and disgraceful in society, including whatever tends to injure the character of an individual or blacken his reputation, or imputes fraud, dishonesty, or other moral turpitude, or reflects shame, or tends to put him without the pale of social intercourse."

A careful consideration of the article here in question does not leave with me the impression that Wood was named as a person from whom the prosecuting attorney could get information, as stated in the majority opinion; but, on the other hand, does leave the impression that Wood was one of the men connected with the thing which the published article condemned, and which was called to the attention of the prosecuting attorney of the county as a proper case for his consideration. It seems to me that the article comes within the rule of the *Lathrop* and *Wells* cases.

For the reasons stated, I am unable to concur in the majority opinion, and therefore dissent.

MOUNT, J., concurs with MAIN, J.

CHADWICK, J. (dissenting)—Let it be remembered that our statute does not require that a man be charged with the commission of a crime before he can recover as for libel.

"Every malicious publication by writing, printing, picture, effigy, sign or otherwise than by mere speech, which shall tend:

"(1)   To expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse; . . ." Rem. & Bal. Code, § 2424 (P. C. 135 § 343).

Section 2320 of the code (P. C. 135 § 135), upon which the majority predicates its opinion, has no more to do with the case at bar then the statute defining larceny.

### "BRIBERY"

"It's a short and ugly word.   Its meaning is plain  . . . The Star has a case for you, Prosecuting Attorney Murphy. It's a case of bribery.   William Knox, 312 First Ave. S., was offered a bribe last Saturday in the offices of the King county republican central committee, 402 Oriental building. One of the men present at the time, Charles B. Wood, invited Knox there by written letter.   Knox was offered the bribe of a political job. . . . Knox refused to be bribed.

"A few days ago, Deputy Prosecutor Ellis announced he would vigorously prosecute all fraud connected with the recall.   Here is something worse, Ellis.   Here is bribery.   What are you going to do about it, Messrs. Murphy and Ellis?"

It would seem that this article touched Mr. Wood in his reputation, and tended to hold him out to public contempt as one who had been a party to a positive violation of the sanctity of the election laws.   In the gradual drift from the technical rules of the common law, the courts have generally come to say that "all words alleged to be libelous should be considered in their natural and obvious sense, unless they be

ambiguous." This court has so held in *Urban v. Helmick*, 15 Wash. 155, 45 Pac. 747; *Denney v. Northwestern Credit Association*, 55 Wash. 331, 104 Pac. 769, 25 L. R. A. (N. S.) 1021. Taking the obvious meaning and intent of the article, Mr. Wood invited Mr. Knox to a certain place, a political headquarters, where he was offered a bribe. If true, Mr. Wood was a party to the act, as much so in law as if he had, by word, made the offer. If it had not been for his interest, Knox would not have been tempted. That such is the meaning and intent of the article, may be quickly demonstrated by putting the question: If Murphy or Ellis had acted upon the *demand* of the respondent, and had instituted proceedings, or if a grand jury had noticed the charge, who would have been summoned and put to the shame of answering the charge? It will not be denied that Mr. Wood would have been put to the burden of clearing the suspicion that had been wilfully cast over his good name. But if, as the majority hold, the charge is not direct, the innuendo of the article is so apparent that no man can mistake its meaning. In *Wilson v. Sun Publishing Co.*, 85 Wash. 503, 148 Pac. 774, the court quoted with approval from *Pratt v. Pioneer-Press Co.*, 35 Minn. 251, 28 N. W. 708:

"Unfortunately, the law of libel has been obscured by a mass of technicalities and subtle refinements."

Assuredly we have lapsed into the fog of technical construction and subtle refinement when we hold that the article is not a charge against Mr. Wood. The utter fallacy of the argument of the majority is demonstrated by the words following:

"Now in this article there is at most only, at first glance, a charging of Wood with the wrongdoing. Read twice, it leaves the impression that Wood was named as a person whom the prosecuting attorney could get information from, by whom would be exposed persons whom he knew to have been with Knox."

Why should we assume that the ordinary reader will read the article "twice," or measure it with the delicate instruments of the law, and, by a process of synthesis, extract the poison that drips from every word of the charge and bury it in the vaults of technicality.

That the word "bribery" should have no mistaken meaning, respondent itself defined it. It says: "It's a short and ugly word. Its meaning is plain." The article is addressed to the one charged with the duty of prosecuting criminals. That no difficulty might be had in making proof, respondent named its witness. Respondent asked the public and the prosecutor to take the word in its "plain" meaning without resort to strained and subtle constructions. It is the legal duty of the judges to see as the general public would see. To attach the word "bribery" to the name of a person has always been held to be libelous *per se*. In truth, no decision, other than this one, has ever been pronounced to the contrary, or if so, it has not been called to our attention. The word *is* a short and ugly word. It means wickedness and corruption. It is not necessary, under our statute, to charge a crime. If it were, I am not so sure that one who wrote a letter to a signer of a recall petition, and was present when a promise of a benefit (the article does not, as the opinion assumes, negative the natural inference that Wood was a party to the promise), would not be guilty under Rem. & Bal. Code, § 4969 (P. C. 167 § 469). Neither are we to read the article as "through a glass, darkly," but as the average man would read it, or, as is said by Lord Tenterden, C. J., in *Harvey v. French*, 1 Cr. & M. 11:

"It is quite clear, from all the modern authorities, that a court must read these words in the sense in which ordinary persons, or in which we ourselves out of court, reading this paragraph, would understand them."

In *Woolnoth v. Meadows*, 5 East. 463, counsel contended, as this court is holding, that:

"The words are certainly abusive; but they do not in themselves *necessarily* point to the particular crime." [Italics mine.]

The contention was quickly met by Lawrence, J. He said:

"The argument then goes too far, when it is contended that the words must be such as must necessarily bear a criminal import, and no other, in order to maintain an action upon them."

Grose, J., said:

"Now a court of justice must read the words in the same sense in which the hearers would at the time they were spoken understand them. When I first read them I had no idea that any serious doubt could be entertained of the sense meant to be conveyed by them, namely, an imputation of . . . crime. I think so still."

It will thus be seen that it is from the impression made by the "first glance," and not when "read twice," that the intent is measured. In the same case Le Blanc, J., said:

"It is not sufficient to shew by argument that the words will admit of some other meaning; but the court must understand them as all mankind would understand them, and we cannot understand them differently in court from what they would do out of court. And it would be impossible for a number of persons indifferently assembled, not to agree in the meaning which has been imputed to these words in the declaration."

In *Peake v. Oldham*, Cowp. 275-278, Lord Mansfield said:

". . . where [words], from their general import, they appear to have been spoken with a view to defame a party, the court ought not to be industrious in putting a construction upon them, different from what they bear in the common acceptation and meaning of them."

These rules have not been departed from in modern times. Mr. Townshend on Slander and Libel, § 133, finds the rule to be as stated by Chief Justice Shaw in *Commonwealth v. Child*, 13 Pick. 198:

"The law cannot be eluded by any of the artful and disguised modes in which men attempt to conceal treasonable or libelious and slanderous meanings and designs."

Newell, in his work on Slander and Libel, lays down the same rule. It is found in all the cases, encyclopedias and text books. It is unnecessary to cite them. They are too great in number, and besides, we ourselves have so held, as is shown by Judge Main.

Neither is the illustration, or the conclusion drawn from the case supposed by the writer of the opinion, "I may call my neighbor a thief, but if at the same time I say that he is a thief because he got his property from an ancestor who stole it in his life time, I have not charged him with being a thief himself," sound in law. It is not only unsound, but has been condemned as a libel where the statute has cured the rule of the common law that something technically criminal must be charged. The word thief imputes crime, and tends to the shame of him to whom it is applied as an epithet. ". . . the tendency of the charge is to bring plaintiff into public hatred, ridicule, or scorn," and is therefore a libel *per se.* 25 Cyc. 284.

The libel is as plain as it was in the *Wells* case. In that case the plaintiff was charged with reviling the flag; in this case, with prostituting our elections. The flag is, in a sense, a sentiment. It stands for purity. Without pure elections, it would mean nothing. Surely an election is as important to the people as the flag. The one is an essential factor in government. The other could be dispensed with, and the government still live. In the *Wells* case, we said:

"Such language requires no innuendo to construe its meaning as intending to bring the individual of whom it is written into public hatred, contempt, and ridicule, expose him to public obloquy, scorn, and shame, and cause him to be shunned and avoided by his fellows." *Wells v. Times Printing Co.,* 77 Wash. 171, 137 Pac. 457.

And of the demand that a criminal charge be instituted:

". . . thus not leaving to inference or presumption that the ordinary effect of the language used in the publications would hold appellant up to public hatred, contempt,

scorn, and shame; but expressly charging that appellant was so regarded to the extent of a public demand that criminal laws be invoked against him."

The complaint states a cause of action and the demurrer should have been overruled.